## BAILEY v. RAILROAD COMPANY.

A railroad company with stockholders and bondholders, being much embarrassed, put before the latter a plan, by which they should surrender a part of their bonds and receive preferred stock therefor; the same to "be 7 per cent. stock and not cumulative, but to share with the common stock any surplus which may be earned over and above 7 per cent. *upon both* in any one year." The bondholders having accepted the plan, a committee was appointed to " carry out the intention " of it. The committee reported an indenture in form to be signed by the bondholders and the company. The indenture contained this provision: " And said corporation covenants and agrees that said preferred stock shall be entitled to a dividend of 7 per cent. from the net earnings of said road in each year, before any dividend shall be declared upon other unpreferred shares of said corporation, and to an equal dividend with said other shares in the net earnings of said corporation, beyond SAID 7 per cent., but shall at no time be entitled to an accumulated dividend," &c. The indenture was approved by the stockholders, who ordered it to be executed, and ordered the directors " to procure such certificates in relation to the preferred stock, to be issued under said agreement, as may be necessary to carry the same into effect." In accordance with this the directors issued and gave to the former bondholders certificates which, premising that they were issued in adjustment of bonds, " and subject to the terms and conditions of the indenture," &c., and " with the rights set forth therein," declared that the

holder was entitled "to receive all the net earnings of said company, which may be divided pursuant to said indenture, in each year, up to $7 per share, *and to share in any surplus beyond $7 per share, which may be divided upon the common stock.*"   Held—

1st. That parol evidence was inadmissible to show how all the parties in interest understood the transaction, from its commencement to its consummation.

2d. That after the preferred stockholders received 7 per cent., the common stockholders were entitled to an equal sum, per cent., before the preferred ones got more.

ERROR to the Circuit Court for Missouri; the case being thus:

The Hannibal and St. Joseph Railroad, in Missouri, with an income of but $450,000, and having a capital stock of $3,000,000, a debt of $8,000,000 of 7 per cent. bonds, and an arrear in interest of $4,000,000—both bonds and interest— secured by mortgage on all the property of the company, found itself, A. D. 1862, in consequence of the then universal depression of values brought about by the rebellion, in such embarrassments that it could neither pay dividends on its stock nor interest on its debt; and as the State of Missouri had a lien of $3,000,000 upon it, which had precedence of every other claim, it became obvious that some vigorous measures of reorganization were necessary if anything was to be saved for either bond creditors or stockholders.

In this state of things, on the 15th of October, 1862, the company issued to the several holders of its bonds a circular entitled, "*A plan for extricating it from its present difficulties, and improving its securities.*"  In this plan the company proposed to these several bondholders that they should exchange their bonds in part for other bonds, having a longer time to run, and in part for preferred stock; "the preferred stock to be 7 per cent., and not cumulative, but to share with the common stock any surplus which may be earned over and above 7 per cent., UPON BOTH, in any one year."

Prior to November 24th, 1862, all the bondholders had come into this plan; their assent being signified by an agreement in these words annexed to the plan itself:

"We, the subscribers, owners of bonds issued by the Hanni-

bal and St. Joseph Railroad Company, of the kinds and amounts set opposite our names, respectively, hereby agree to surrender the same and receive in exchange therefor new bonds and preferred stock, *in accordance with the provisions of the plan for extricating the company from its present difficulties and improving its securities, dated* 15*th October,* 1862, *and hereunto annexed.*"

On the same 24th of November, 1862, the board of directors of the road

"**Voted,** that Messrs. Bartlett, Thayer, and Hunnewell be, and they are hereby appointed a committee with power to carry out the *intention* of the circular of October 15th, 1862, entitled 'A plan for extricating it from its present difficulties and improving its securities,' and that they are authorized to make such expenditures therefor as to them may seem discreet."

This committee, in discharge of the duties of their appointment, reported an "indenture" to be executed by the company on the one hand, and the bondholders or the trustees of the mortgage on the other, which, after referring to the embarrassments of the company, went on to give effect to the plan; though no reference was anywhere made in the instrument to this agreement itself. The indenture contained this clause:

"And said corporation covenants and agrees that said preferred stock shall be entitled to a dividend of 7 per cent. from the net earnings of said road in each year, whenever a dividend of said net earnings shall be made, before any dividend shall be declared upon other unpreferred shares of said corporation, and to an equal dividend with said other shares in the net earnings of said corporation beyond SAID 7 per cent., but in no case to be entitled to an accumulated dividend (in case a dividend shall fail to be made in any one or more years, or, if made, be insufficient to pay said 7 per cent.) in any subsequent division of said net earnings, but shall be entitled only in that event to SAID 7 per cent., and to share in said surplus earnings as aforesaid."

On the 1st April, 1863, this form of indenture being laid before the board of directors, was by it referred to a stock-

holders' meeting to be held on the 30th May, 1863. At this meeting the board of directors were

"Instructed to procure and adopt, on behalf of the corporation, such certificates in relation to the preferred stock, *to be issued under said agreement, as may be necessary to carry the same into effect,* and cause the same to be executed in behalf of this corporation in such manner as they may think best."

Under this authority the indenture was accordingly executed by Mr. W. H. Swift and others, trustees for the bondholders, on the one part, and the company on the other; and the directors, on the 26th June, 1863, prepared and adopted a form of certificate thus :*

NUMBER.]            STATE OF MISSOURI.            [SHARES.

### Hannibal and St. Joseph Railroad Company.

PREFERRED STOCK. }   SHARES $100 EACH.   { SEVEN PER CENT.

Issued in adjustment of the bonds of said company, . . . and *subject to the terms and conditions of an indenture* between said corporation and W. H. Swift and others, trustees, dated April 1st, 1863, *and with the rights set forth therein,* and may be transferred upon the books of the company and new certificates issued, and may be used, with the bonds of said company bearing date April 1st, 1863, in the purchase of its lands, as provided in said indenture.

The Hannibal and St. Joseph Railroad Company hereby certifies that, in consideration of the surrender and placing in trust of bonds and coupons in pursuance of said indenture, ................................................................. is entitled to .................. shares of the preferred stock of said corporation, and to receive all the net earnings of said company which may be divided pursuant to said indenture in each year, up to $7 per share, *and to share in any surplus beyond $7 per share which may be divided upon the common stock.*

WITNESS the seal of the corporation and the signatures of the transfer agent and of one of the directors, at Boston, Mass., the .................. day of ............................, A. D. 186

.................. ....................................

Transfer Agent.

Certificates were made out accordingly in this form, and

---

* Prior certificates in the same form, only conditioned upon the procuring of legislation supposed to be requisite, had been issued, and the legislation having been obtained were recalled, and superseded by new ones in the form given in the text.

given to the bondholders, who received them without any expressed exception to their tenor.

In January, 1870, the company had so far retrieved its disasters as to declare a dividend of 7 per cent. on the preferred stock. Having yet a surplus it made a dividend of $3\frac{1}{2}$ per cent. of it to the common or unpreferred stock, to the exclusion of the preferred stock, and was about to make another dividend of $3\frac{1}{2}$ per cent. in the same way.

Hereupon one Bailey, owner of several shares of the preferred stock, filed a bill, annexing the indenture and form of certificate, but not the plan, as exhibits, to enjoin this further dividend on the unpreferred stock, and to have it appropriated to the preferred stock.

The defendants answered the bill, annexing the plan and form of certificate, but not the indenture, as exhibits, and contending that on a true construction of the documents in the case no such appropriation ought to be made; and on the hearing they introduced, against the objection of the plaintiff, the evidence of persons who had prepared the indenture, that it was drawn with the purpose of giving effect to the plan, and that from the commencement of the transaction to its conclusion parties concerned understood the transaction as they, the defendants, alleged it when rightly construed to be.

The court dismissed the bill and the complainant appealed.

*Messrs. Glover and Shepley, for the appellant:*

1. The evidence as to how parties *other* than Bailey understood the arrangement was so palpably improper that we spend no time in arguing the point that it was so.

2. The *indenture* is the contract, and the only contract in the case. All preceding suggestions and propositions were merged in this more-solemn instrument. Now, the words " *said* 7 per cent." in it show that the meaning of the parties was that the holders of the preferred stock should equally share in any dividend which might be declared from the net earnings beyond " the *said* 7 per cent.," which by the terms

of the indenture was first to be set apart for a dividend upon the preferred stock.

3. There is nothing in the concluding language of the certificate opposed to this idea. Contrariwise, that language accords with the idea. When, after speaking of the dividend of $7 per share to be applied as a dividend upon the preferred stock, the sentence continues " and to share in any surplus beyond $7 per share," it has reference to the surplus remaining after the $7 had been applied to the payment of a dividend of that amount on the preferred stock. At best the language is doubtful, and as the certificate on its face declares that it is issued " subject to the terms and conditions of the indenture," and " with the rights *therein* set forth," the doubt must be cleared up by the plain language of the solemn and fundamental instrument of the contract. Nay, if the concluding language of the certificate were opposed to Bailey's claim he would have a right to have the certificate reformed, according to the indenture to whose " terms and conditions" it declares that it is issued. The indenture does not state that it is made in pursuance of execution of the plan, or even so much as refer to it.

The fact is that the defendants, to overturn our claim, have to reconstruct the whole contract. They have to add to the sentence a new phrase, containing a new idea, as thus :

" And to an equal dividend with said other shares in the net earnings of said corporation beyond said 7 per cent., *after an equal dividend shall have been next declared upon the said unpreferred stock.*"

*Messrs. T. T. Gantt and J. Carr, contra :*

There is a radical defect in the argument of the opposing counsel in supposing that the indenture is the fundamental contract. The *plan*, which was so specifically assented to by the bondholders as that their assent is on a paper appended to it, is the basis of everything. The indenture was undoubtedly prepared and executed to carry *it* out, and if giving rights varying from it, might be reformed by *it*. Now,

by the plan, the 7 per cent. is to be "not cumulative, but to share with the common stock any surplus which may be earned over and above 7 per cent. *upon both* in any one year." This language is fatal to the complainant's case.

The word "said," which makes the complainant's strongest point, is exceedingly apt, even in carefully drawn documents, to be inadvertently repeated. In this case, unlike most cases, the inadvertence somewhat affects the meaning. But all the documents form part of one transaction, and of course are to be taken together. The indenture is to be read by the light of the plan which preceded and the certificate which followed it. The maxim of the law is, "*Ex antecedentibus et consequentibus optima fit interpretatio.*" And when we look at the plan submitted, the circumstances under which the committee which drafted the indenture was appointed, the agreement with the bondholders which the committee was instructed to embody and carry out, the action of the directors upon the indenture, the reference of the question of its adoption to a stockholders' meeting, the guarded terms of the resolution then passed, and, finally, the definition unequivocally given, of the nature of the preferred stock by both the corporation and its bondholders, by the form of the certificate adopted, all doubt vanishes as to the construction which must be placed on *all* the documents.

To all this may be added, though it is unnecessary, the concurrent testimony of persons who prepared the indenture and other parties concerned in the matter; a sort of testimony not, we think, improper, and which, if received, is in its nature strong.

Mr. Justice CLIFFORD delivered the opinion of the court.

Certificates of stock, described in the bill of complaint as common or unpreferred stock, amounting to $3,000,000, were issued by the respondents, divided into shares of one hundred dollars each, which constituted their capital stock. Pecuniary obligations were contracted by the company in constructing the road, much beyond their means of payment, which consisted of three classes of bonds, issued by

the company at different times, in aid of the construction and equipment of the road, and which were secured by three several mortgages, and were known as land bonds, convertible bonds, and second mortgage bonds. Embarrassment necessarily ensued, as the stock of the company had become of no value in the market, and as the respondents were unable to pay the interest on their bonds or to make any dividends, they issued to the holders of the bonds a circular or plan for extricating the company from their difficulties and for improving their securities. By that plan they proposed to the several holders of the bonds that they should exchange the same in part for other bonds and in part for preferred stock of such a nature that its holders should have the right to receive " 7 per cent., not cumulative, but to share with the common stock any surplus which may be carried over and above 7 per cent. *upon both* in any one year." Measures were adopted to send that circular to all the holders of the bonds, and it appears that a large majority of the bondholders approved and accepted the terms and conditions of the proposed arrangement, and as evidence thereof signed an instrument by which they agreed to surrender the mortgage bonds which they held, and receive, in exchange therefor, new bonds and preferred stock in accordance with the provisions of the plan for extricating the company from its present difficulties and for improving their securities; that the respondents thereupon appointed a committee with power to carry it into effect; that the committee prepared an indenture to accomplish that end; that they subsequently, by order of the directors, submitted the same to a meeting of the stockholders convened for that purpose, and that the stockholders did then and there accept and ratify the action of the directors and of the committee and ordered that the indenture should be duly executed and delivered. Authority was also conferred upon the directors, at the same meeting, to adopt, in behalf of the company, such certificates in relation to the preferred stock to be issued under the agreement " as may be necessary to carry the same into effect," and to cause the same to be executed,

in behalf of the company, as they may think best. They, the directors, accordingly prepared and adopted, in behalf of the company, the form in which all of the certificates of the preferred stock were for a time issued by the respondents, which contains the recital that the holder "shall be entitled to receive all the net earnings of said company which may be divided pursuant to said indenture in each year, up to $7 per share, and to share in any surplus beyond $7 per share which may be divided upon the common stock." Certificates of preferred stock were issued in that form until the legislature passed the act authorizing the company to convert their bonds secured by mortgage into preferred stock, when the certificates issued in that form were recalled and a new form was adopted, but inasmuch as it contains the same provision in respect to the right of the holder to participate in the yearly net earnings of the company it need not be reproduced, except to say that the certificates in the second form, as well as in the first, purport, on their face, to be issued subject to the terms and conditions of the indenture between the company and the trustees, which the stockholders directed should be executed and delivered to carry the plan sent to the bondholders into effect. Pursuant to that order it was executed, and it contains the following provision : " That said preferred stock shall be entitled to a dividend of $7\frac{1}{2}$ per cent. from the net earnings of said road in each year, whenever a dividend of said net earnings shall be made, before any dividend shall be declared upon other unpreferred shares of said corporation, and to an equal dividend with said other shares of the net earnings of the company beyond said 7 per cent., but shall at no time be entitled to an accumulated dividend in any subsequent division of said net earnings." Eight hundred shares of the preferred stock are owned by the complainant, and he filed the bill of complaint claiming that by the true construction of the indenture the preferred stock is entitled, not only to a dividend of 7 per cent. from the net earnings of the road in each year, before any dividend is declared in favor of the unpreferred stock, but also to an equal dividend with the unpreferred

stock in the net earnings of the same year beyond the amount required to discharge the dividend of 7 per cent. secured to the preferred stock.

Shares of the preferred stock, it is conceded, are entitled to a dividend of 7 per cent. from the net earnings of the road in each year whenever a dividend of net earnings is made, before any dividend can be claimed for the shares of the unpreferred stock, as that is a matter of priority created by the indenture, but it is insisted by the respondents that the priority does not extend beyond the 7 per cent., that when that priority is satisfied the preferred stock is not entitled to any further dividend in that year until the unpreferred stock shall receive a 7 per cent. dividend from the net earnings of the road in the same year.

Ten and a half per cent. net having been earned by the road in one year, the directors, adopting the views of the respondents, made a dividend of 7 per cent. upon the preferred stock, and having satisfied that priority, they made a dividend of $3\frac{1}{2}$ per cent. from the residue of the net earnings beyond the 7 per cent. upon the unpreferred stock, and the complainant insisting that the fund of $3\frac{1}{2}$ per cent. was to be shared equally between the preferred and the unpreferred stock, filed the present bill of complaint and prayed for an injunction to restrain the company from paying any such dividend upon the unpreferred stock. Proofs were taken and the parties having been heard the court entered a decree for the respondents, dismissing the bill of complaint.

Evidence was introduced showing that all the parties understood the transaction, from its commencement to its final consummation, as it is understood by the respondents, but it is insisted by the complainant that such evidence is inadmissible, as its tendency is to explain and qualify what is in writing, and the court is inclined to concur with the complainant in that proposition. Such evidence cannot be admitted in the case except for the purpose of connecting the several written instruments together, and of showing that

they are all parts of one transaction; nor is it admitted that the evidence is necessary in this case, even for that purpose, as the instruments themselves contain the most persuasive evidence to establish that fact, and inasmuch as it appears that they were all introduced, either by the complainant or by the respondents, without objection, they are properly before the court. Such being the fact it is quite clear that they must all be regarded as instruments *in pari materia,* and that as such they are the proper subjects of consideration in order to ascertain and determine what is the true nature of the transaction and the true construction of the contract between the parties. All of these writings were executed as means to the same end, which was to enable the company to find relief from the impending dangers and great embarrassments with which they and all interested in their affairs were surrounded. They could command nothing, nor were the bondholders in much better condition, as a foreclosure would not, in all probability, accomplish much except to sacrifice the interests of all concerned. Everything connected with the enterprise was in jeopardy except the interest of the State, whose loan of $3,000,000 was secured by a first mortgage, covering the franchise, road-bed, and all the rolling stock of the company, whose lands, franchise, road-bed, and other property were also incumbered by the other three mortgages before mentioned, amounting to $8,000,000.

No attempt was made to negotiate with the State, but the relief sought was obtained by the arrangement with the holders of the bonds issued by the company, and which were secured by the three mortgages aforesaid which were subject to the mortgage given to the State, as follows: (1.) Holders of bonds under the first of the three mortgages were to surrender 30 per cent. of their bonds and all their unpaid coupons, and to accept preferred stock for the amount. (2.) Persons holding bonds under the second mortgage were to surrender 40 per cent. of their bonds and all their unpaid coupons, and they were to accept preferred stock as stipulated in the indenture. (3.) Those holding bonds under the third mortgage were to surrender the whole of their bonds

and unpaid coupons, and were to accept preferred stock for both bonds and coupons.

Priority was thus secured by the bondholders over the un-preferred stock amounting to a lien, as against the holders of the latter stock, for a yearly dividend of 7 per cent., if the net earnings of the road were sufficient for that purpose, as conceded by both parties. Prior stockholders yielded them that preference, but they insist that no just construc-tion of the contract will give them any more in any one year until the net earnings of the road will also give to the holders of the unpreferred stock a dividend for the same amount, and the court is inclined to adopt the same con-clusion.

Test the question by the circular addressed to the bond-holders, which they all signed as the preliminary step to the arrangement, and the inquiry is too clear for argument, as the statement is 'that the preferred stock shall "be 7 per cent., not cumulative, but to share with the common stock any surplus which may be carried over and above 7 per cent. *upon both* in any one year," which means, as plainly as lan-guage can express the idea, that the preferred stock shall share in the surplus arising from the net earnings of the company, in any one year, beyond what is necessary to pay a dividend to the whole stock, preferred and unpreferred, of 7 per cent.   Nothing more favorable could be expected by the bondholders, as they signed the circular and agreed to surrender the number of bonds set against their respective names and to receive in exchange therefor new bonds and preferred stock in accordance with the provisions of the plan for extricating the company from their present difficulties and for improving their securities, showing that their atten-tion had been called to the plan and that they were satisfied with its terms and conditions.*   Beyond doubt the directors understood the matter in the same way, as they invested the committee, which they appointed, with the power to make such expenditures as to them should seem discreet to carry

---

* Sturge *v.* Railway, 7 De Gex, Macnaghten & Gordon, 158.

out the plan, which was sent to all the bondholders for their approval.

. Suppose that is so, still it is insisted that the indenture is the only evidence of the contract between the parties, but it is too late to advance that proposition, as all the other instruments are before the court without objection, and several of them were introduced by the complainant as exhibits to the bill of complaint.   Seasonable objections, however, could not have availed the complainant if they had been made, as it is well-settled law that several writings executed between the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction, nor is it necessary that the instruments should in terms refer to each other if in point of fact they are parts of a single transaction.*   Until it appears that the several writings are parts of a single transaction, either from the writings themselves or by extrinsic evidence, the case is not brought within the rule, as it may be that the same parties may have had more than one transaction in one day of the same general nature.   Doubt upon that subject, however, cannot arise in this case, as the due relation of the several writings to each other is conceded by both parties.†

Standing alone it may be admitted that the indenture furnishes some support to the views of the complainant, but it is clear that all ambiguity disappears when it is read in connection with the writings which preceded and followed it in respect to the same subject-matter.   Ample justification for that remark is found in the plan which preceded it and which was approved and signed by all the bondholders, and in the form prepared for the certificate of the preferred stock which was adopted subsequently to the execution of the indenture, and which was accepted by all the holders of the

· * Cornell *v.* Todd, 2 Denio, 133; Jackson *v.* Dunsbagh, 1 Johnson's Cases, 91; Stow *v.* Tiftt, 15 Johnson, 463; Railroad *v.* Crocker, 29 Vermont, 542; Sturge *v.* Railway, 7 De Gex, Macnaghten & Gordon, 158; Jackson *v.* McKenny, 3 Wendell, 233; Hull *v.* Adams, 1 Hill, 601.

† Cornell *v.* Todd, 2 Denio, 133.

preferred stock as a complete fulfilment of the arrangement between them and the company. Holders of preferred stock, as there provided, are entitled to receive all the net earnings of the company which may be divided pursuant to the indenture in each year up to $7 per share, and to share in any surplus beyond $7 per share which may be divided upon the common stock, which in substance and legal effect is the same regulation as that contained in the circular or plan, and all the other writings upon the subject which were given in evidence at the final hearing.*

Viewed in any reasonable light the court is of the opinion that the decision of the Circuit Court is correct, and that there is no error in the record.

DECREE AFFIRMED.

---

* Bailey v. Hannibal and St. Joseph Railroad Co., Dillon, 176.