McELROY et al. v. DANCIGER. (No. 1960.)

(Court of Civil Appeals of Texas. Amarillo. May 3, 1922.)

**1. Damages ⬤⇒80(1)—To defeat recovery of agreed damages for breach of contract, defendant must show material variance from amount of contemplated actual damages.**

One seeking to defeat the terms of a contract providing for a stated sum, as agreed damages for a breach thereof, should show the damages were reasonably capable of ascertainment, and that there was no approximation between the contemplated actual damages and the damages fixed.

**2. Damages ⬤⇒78(6)—Provision for forfeiture of deposit on breach of contract held not a penalty but one fixing damages on default.**

Time being an important element in closing contracts for the sale of oil leases, a clause thereof providing for the forfeiture of an amount deposited in escrow by the buyer if he fails to comply, should be interpreted as fixing the damages in case of default, and not as a penalty, whether or not it is sufficient to compensate the seller for his loss.

**3. Mines and minerals ⬤⇒74 — Contract for sale of oil lease designating section by number, certificate, original grantee, etc., held sufficient.**

Under the rule that that is certain which can be made certain, a contract to sell an oil lease on 240 acres of the north half of a certain section, designated by number, certificate, original grantee, etc., sufficiently identified the section without giving its width, breadth, or boundaries.

**4. Deeds ⬤⇒38(1)—Vendor and purchaser ⬤⇒ 22—Deed or contract not void for uncertainty, unless description cannot be made applicable to any definite land by extrinsic evidence.**

A deed or contract to convey is not void for uncertainty, unless on its face the description cannot, by extrinsic evidence, be made to apply to any definite land, the office of the description being not to identify the land, but to furnish means of identification.

**5. Mines and minerals ⬤⇒74—Contract to assign oil lease, with assignment and lease, held sufficient to designate land covered by latter.**

A contract to assign an oil lease, identifying the section on which the lease was located and reciting that the land "will be more fully described in assignment," construed together with the lease and the assignment, which, when executed and placed in escrow, as provided by the contract, was incorporated in the latter, held sufficient, with testimony as to what land was being purchased, to definitely designate the particular tract covered by the lease.

**6. Frauds, statute of ⬤⇒118(2)—Document incorporated by reference into another may be considered with latter, in determining whether statute has been complied with.**

An express or implied reference in one document to another incorporates the latter into

the former, so as to allow the two to be considered together in determining whether the statute has been complied with.

**7. Frauds, statute of ⬤⇒118(1)—Assignment of lease signed and placed in escrow by assignor pursuant to contract to assign held binding.**

Under the statute of frauds, a contract to assign and the assignment of an oil lease, both signed by the owner, as the party to be charged, were enforceable by assignee when the assignment was executed and placed in escrow by assignor, as agreed in the contract, and passed the lease, if the lease is designated with reasonable certainty.

**8. Frauds, statute of ⬤⇒118(2)—Assignment of oil lease should give such of its terms as to identify it, but reference to lease is sufficient.**

While the object of Rev. St. art. 3965, requiring that a contract or lease of land be in writing, signed by the party to be charged, was to abrogate parol titles, which is sufficiently accomplished by vendor's promise to convey, without stating the other terms of the agreement, an assignment of an oil lease should give such of its terms and conditions as to describe or identify it, but reference to the lease for identification and its terms is sufficient.

**9. Frauds, statute of ⬤⇒118(5)—Assignment of lease on designated land held sufficient with evidence of vendor's ownership thereof, to identify lease.**

An assignment of a "certain" oil lease, which the evidence showed assignor had on the particular land therein designated, was sufficient to identify the particular lease assigned, the reference thereto rendering it certain under the maxim that that is certain which can be made certain.

**10. Frauds, statute of ⬤⇒118(2)—Contract for sublease subject to lease not yet in existence sufficient after such lease is obtained in writing.**

A written agreement for a sublease to be made subject to a lease not yet in existence is not insufficient under the statute after such lease is obtained in writing, as a contract or memorandum sufficient to satisfy the statute may consist of a writing which is insufficient standing alone, together with another writing referred to therein which, though not in existence at the time, is executed before action is brought.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by M. O. Danciger against F. B. McElroy and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Bullington, Boone, Humphrey & Hoffman and Carrigan, Montgomery, Britain & Morgan, all of Wichita Falls, for appellants.

Hunter & Scott, of Wichita Falls, for appellee.

HUFF, C. J. This action was brought by Danciger against McElroy and Burton, on

a contract for damages in the sum of $10,000, stipulated for in the contract as liquidated damages, and against the City National Bank of Wichita Falls, as a stakeholder, the allegations being in effect that appellee and appellants entered into a contract by which appellee obligated himself to sell to appellants an oil and gas lease in and to 240 acres of land, for which appellants agreed to pay $42,000, and, as part of the contract, appellants deposited in escrow $10,000 with the bank as earnest money; that appellee complied with his contract; and that appellants refused on their part to comply with their part, thereby forfeiting the $10,000, for which he sues.

In the trial court there must have been some issue as to the title, as shown by the abstract. That matter, as we understand the briefs, is not before this court. The case was submitted to a jury on special issues. Their findings in effect are that appellants entered into the contract declared upon knowing the terms and conditions of the leasehold; that appellee was ready and willing at the time for the consummation of the contract to deliver the lease for the consideration named in the contract and that appellants breached their agreement to purchase the oil and gas lease, and refused to carry out their contract and to receive the property conveyed on their agreement with appellee; that the minds of the parties met on all the terms and conditions of the contract, as well as all the terms and conditions of the lease from Orton and others to Danciger. The instruments out of which this suit arose are, first, a contract executed between J. W. Campbell and M. O. Danciger, by which Campbell, in consideration of the sum of $30,000 to be paid, agreed to assign an oil and gas lease to—

"240 acres out of the N. ½ of section No. 2, state school land, 16/168 S. P. Ry. Company, original grantee, Archer county, Texas, which will be more fully described in the contract."

This contract provided for furnishing abstracts for examination, etc. The assignment was to be executed and placed in the First National Bank of Wichita Falls, and that $4,000 paid by Danciger in the bank as a fo. it. This contract was dated October 21, 1919. There were powers of attorney introduced in evidence from the owners of the land, Orton and others, to Campbell, but these powers were dated and executed after the above contract. The oral evidence, however, shows that Campbell was acting as agent for the owners in the contract entered into by him with Danciger.

An oil and gas lease dated October 23, 1919, executed by Mrs. Tempie Orton, S. B. Orton, Lula Orton, Harriet Palmer, and J. R. Palmer to M. O. Danciger. This oil lease was on the following described land in Archer county, Tex.:

"The N. E. quarter and the S. half of the northwest quarter of section No. two (2), certificate 16/168, S. P. Ry. Co. lands, containing 240 acres, more or less."

The lease was to remain in force for three years and as long thereafter as oil or gas, or either of them, were produced from the land by the lessee. It provided for one-eighth royalty in the oil produced and $100 to the lessors from each well producing gas, and provided for commencing drilling in one year and, unless the drilling was begun, a rental of $1,200 a year, keeping the lease in force for one year. The form of the lease is referred to by the parties in the testimony and brief as producers' form No. 88. All the lessors acknowledged the lease on October 23, 1919, except J. R. Palmer and Harriet Palmer. The certificate of the notary to their acknowledgment is dated December 13, 1919. On October 22, 1919, M. O. Danciger and W. J. Burton and F. R. McElroy entered into the contract upon which this suit is based. By this contract Danciger stipulated he had sold a lease to appellants, and oil and gas lease on "240 acres out of the N. ½ of section 2, state school lands, 16/168, S. P. Ry. Co. original grantee, Archer county, Texas, which will be more fully described in the assignment," in consideration of the sum of $42,000, to be paid as therein stipulated. Appellee was to furnish an abstract within 10 days. Appellants were to have 5 days to examine the same, and, if defects were found, appellees should be advised and have 10 days time thereafter to remove the defect. If a good and merchantable title could not be made, then the contract was to terminate as to both parties. The appellee—

"agrees to execute an assignment to the above-described lease, which assignment will be placed in the City National Bank of Wichita Falls, together with the sum of ten thousand ($10,000.00) dollars, to be paid into said bank by the party of the second part (appellants), which assignment and money will be held in said bank in escrow, pending examination of title as herein provided for."

If the title was such as contracted for, appellants agreed within 5 days to pay to the bank an additional sum of $16,000, and the bank was thereupon directed to deliver the assignment to appellants and the $10,000 to appellee.

"If the party of the first part (appellee) shall comply with the terms of this contract and party of the second part (appellants) shall fail or refuse to comply with the terms hereof, then and in that event the said ten thousand ($10,000.00) dollars to be paid said bank as herein provided will be forfeited to party of the first part, as liquidated damages for breach of this contract."

The assignment bearing date October 30, 1919, from Danciger to appellants, McElroy and Burton, reciting that he granted, sold,

transferred, assigned, and set over to appellants all his title and interest "in and to that certain indenture of oil and gas lease and leasehold estate, in so far as it affects the following described land, situated in the county of Archer, state of Texas: The northeast quarter and south half of the northwest quarter of section number two (2), certificate $^{10}/_{168}$, S. P. Ry. Co. land and containing 240 acres, more or less," reserving therefrom the rents, royalties, stipulations, and agreements made between the original lessor and lessee, as a principal consideration for executing the lease, "to which reference is here made." J. W. Campbell, who executed the contract with Danciger on the 21st day of October, 1919, testified that he did so as the agent of Mrs. Orton, a widow, who, with her son and daughter owned the land; that the widow had listed the property with him and had the control and management of the land. He testified the lease above set out was executed and placed in escrow with the contract; that one of the children lived at Canyon City, Randall county, and that the witness took the lease out there for them to sign. His testimony indicates that he was accompanied by Mrs. Orton, the mother. He first states he got to Canyon City on the 22d of October, with the lease, but later seems to decide that it might have been the 23d. The son and his wife and mother signed the lease, and their acknowledgment was there taken on October 23d. The lease was then taken to Oklahoma for the Palmers to sign and acknowledge, after which it was placed in escrow in the bank with the contract, either on the 23d or 24th of October. As we read the evidence, the lease was actually drawn the same day the contract was drawn, October 21st, and Danciger took a copy of it or had a copy of it. The evidence shows also that Palmer's and his wife's acknowledgment was first taken on an Oklahoma form, and, before the final payment on the contract by Danciger, the lease was obtained from the bank, and it was taken to Oklahoma to obtain the acknowledgment of the lease by Palmer and wife on a Texas form of acknowledgment, which accounts for the date of the certificate to their acknowledgment of December 13, 1919. Danciger and others testified that appellant saw a copy of the lease which he had, and that they discussed the form of the lease, the royalty to be paid, and the rentals, etc., and that the contract was made with reference thereto. This the appellants deny.

It is sufficiently established, however, we think, by the oral testimony, that the contract executed by Campbell to Danciger called for this lease; that Danciger had a copy of the lease; and that the lease was placed in the bank and held in escrow with Danciger's contract, not later than October 24, 1919; that on October 22d, when Danciger contracted with appellant that they saw a copy of the lease and discussed its terms, or at least knew of its terms and contracted with reference to it; that they also knew the land and lease which appellee was selling them was the same land and lease called for in the Campbell contract of October 21st, then in the bank. In connection with their trade, they examined the maps showing the locality of this land and contracted with reference to the land, as shown on the map. The assignment from Danciger was executed afterwards and was not placed in escrow until about the 30th day of October, 1919. The facts also show that an oil well in the neighborhood of this land had been reported as a producing well a day or so before the contract was executed; that a few days later the well, it was reported, was showing salt water, and that this report affected the price from that time on, which began to decline and has continued to do so, and the facts sufficiently appear that, but for this contract, appellee probably could have sold to other parties. The facts show that appellee complied with his contract in regard to the purchase of the oil lease and paid the contract price, $30,000; that he furnished an abstract showing title, as agreed upon, and in fact the statement of facts in this court recites that the abstract of title is not sent up because there is no question made on that ground. The evidence also supports the jury's finding that appellants breached their contract and refused to carry it out. The appellee is therefore entitled to recover the $10,000 as a forfeit; if that sum, under the contract, was a liquidated amount and not a penalty, or because of uncertainty and indefiniteness in the description of the land and the oil lease, it cannot be enforced because it is condemned under the statute of frauds. These two questions are presented for our determination.

The assignments and propositions are based upon the refusal of the trial court to instruct a verdict for appellants. It is asserted by proposition that the court should have instructed a verdict because the appellee failed to plead and prove sufficient facts showing that he had been damaged in the sum sued for and because the contract on its face shows the amount was a penalty and not a liquidated demand.

It is our view the clause in the contract should be interpreted as fixing the damages in the case of default. Our Supreme Court, in discussing a provision in a contract of similar import, said:

"Whether the vendor, who rescinds an executory contract for the sale of land, shall return the purchase money paid depends upon the equities of each case. If it would be inequitable for such a rescission to occur without restoration of the money paid, then it must be returned. No equities are shown by the allegations of the petition [brought by the vendee in that case], but it does appear that the dam-

ages which Fuqua might suffer by a breach of the contract were very uncertain, and it is not made to appear that $10,000 was unreasonable as an estimate of the parties of such damages. Therefore, courts will assume that the amount agreed upon was intended to compensate Fuqua for the loss he might sustain from a breach of the contract. Bessling v. Hale, 1 Ct. of Apps. Cas. par. 288; Durst v. Swift, 11 Texas, 273; Yetter v. Hudson, 57 Texas, 604." Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061.

[1] It is the holding of this court, supported by the above case and others, that a party who seeks to defeat the terms of a contract providing for a stated sum as agreed damages, which the parties contemplated might result from a breach of the contract, should show they were reasonably capable of ascertainment and that there was no approximation between such contemplated actual damages and the agreed damages fixed by the contract. Kollaer v. Puckett (Tex. Civ. App.) 232 S. W. 914; Garrard v. Cantrell (Tex. Civ. App.) 232 S. W. 911 (opinion on rehearing); Long v. Martin (Tex. Civ. App.) 234 S. W. 91. In the last two cases, writs of error have been granted, whether on the question here we are not informed. The above statement, we think, is supported by an opinion of the Commission of Appeals, in which it is held:

"Where, as in this case, it cannot be ascertained from the face of the contract that the damages stipulated to be paid in case of breach are excessive, and there is no evidence of the amount of damages actually suffered, so that it cannot be determined from the evidence whether the stipulated amount reasonably approximates the actual damages, the provision cannot be construed as a penalty." Walsh v. Methodist Church (Tex. Com. App.) 212 S. W. 950.

This rule is supported by the Supreme Court in Eakin v. Scott, 70 Tex. 442, 7 S. W. 777, and by Court of Civil Appeals, Reinhardt v. Borders, 184 S. W. 791; Halff v. O'Connor, 14 Tex. Civ. App. 191, 37 S. W. 241; Kaufman v. Christian-Wathen Lumber Co. (Tex. Civ. App.) 184 S. W. 1048; Dilley & Son v. Wise (Tex. Civ. App.) 160 S. W. 986.

[2] We think we are justified in saying that, as a rule, parties entering into contracts for the sale of oil leases understand, that if default is made, the sum paid or deposited is forfeited to the injured owner by the breach and is to compensate him for the loss, and that they have agreed upon the damages as a stipulated demand. Time is an important element in closing contracts as to oil leases and the like. Values fluctuate, either up or down, depending upon production or nonproduction in the neighborhood of the land. Failing to comply with the contract, as in this case, the value of the lease may greatly depreciate, as in this case, inflicting great loss upon the owner, or delay him or prevent him making an advantageous sale. So we think under such circumstances it should be held the parties contracted in view of the conditions, and they therefore fixed the damages as an ascertained amount. It may or it may not compensate the owner of the land for the loss he has sustained. Yetter v. Hudson, 57 Tex. 604.

[3] The appellant presents the following proposition:

"Because the contract was not sufficient to enforce specific performance thereon, in that the description of the property to be conveyed or assigned was too indefinite, vague, and uncertain and, being a conveyance affecting real estate, was within the statute of frauds."

We take it from appellant's brief the contention is that the land itself was not described with such definiteness that it can be identified or designated and that the oil lease to be assigned is not sufficiently designated as to its terms, conditions, rentals, or the like. While the proposition is general it may be sufficient to require an examination of the contract as to those features. The contract, we take it, is sufficiently definite as to all its terms, except it may be urged to be vague as to the land and the terms of the lease. It will be observed it was agreed to give an oil lease on 240 acres out of the north half of the section, designating it by number, certificate, original grantee, etc. The section is sufficiently described by number, etc. We think it is generally, in this and in other jurisdictions, held sufficient to identify the section, if named by number or the like, without further giving its width and breadth or its boundaries. It is certain under the rule that that is certain which can be made certain. It can be identified and located. The contracts give sufficient data for that purpose. 2 Devlin on Real Estate, § 1012 et seq.; Eustis v. City of Henrietta, 90 Tex. 468, 39 S. W. 567; Hardin County v. Nona Mills Co. (Tex. Civ. App.) 112 S. W. 822.

[4] The office of a description in a deed or contract is not to identify it but furnish means of identification. A deed is not void for uncertainty, unless on its face the description cannot, by extrinsic evidence, be made to apply to any definite land. A very short description in the instrument may be sufficient to furnish the means of identification. Morrison v. Dailey (Tex. Sup.) 6 S. W. 427; Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Dyer v. Winston, 33 Tex. Civ. App. 412, 77 S. W. 227; Frazier v. Lambert, 53 Tex. Civ. App. 506, 115 S. W. 1174; Ilseng v. Carter (Tex. Civ. App.) 158 S. W. 1163; Ragsdale v. Mays, 65 Tex. 255; Crimp v. Yokeley, 20 Tex. Civ. App. 231, 48 S. W. 1116. The above are cited by appellees, and we add the following: Taffinder v. Merrell, 95 Tex. 95, 65 S. W. 177, 93 Am. St. Rep. 814; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Wilson v. Smith, 50 Tex. 365; Porter v. Memphis Land Commission Co. (Tex. Civ. App.) 159 S. W. 497. In the Taffinder Case the documents referred to

two lots in the town of Hamilton, owned by Taffinder and wife as community property. It was held, in order to identify the property, all that was necessary to do was to prove that the lots were thus owned. The evidence showed this was true. In the Hermann Case the land was described as "half interest in and to 893 acres of the P. W. Ross survey in Harris county." The Ross survey was a league and labor, and the particular part of it intended to be sold was not otherwise identified. The Supreme Court held that the description meant a tract of 893 acres belonging to the estate, and that the land could be identified by evidence that the estate did own a half interest in such a tract and no other part of the league. In that case the 893 acres was not necessarily a separate tract of land and it did not name the party in whose name it was held or who owned it.

[5] Here the contract recited Danciger sold and "agreed to assign an oil lease," not to make or to execute a lease, but to assign an existing lease on 240 acres out of the north half, etc., implying, we think, an existing lease which he could assign. This does not indicate he was contracting an undivided 240 acres interest, but to assign a lease on a particular 240 acres on which the lease existed, and which appellee owned or had the right to assign. This contract is yet stronger. It is recited in the contract that it "will be more fully described in assignment." Again, appellee agreed "to execute an assignment to the above-described lease" and placed it with the bank in escrow. This assignment was so executed and placed in escrow with the joint agent of the two parties, which was a delivery according to the contract, of an assignment "to that certain indenture of oil and gas lease and leasehold estate," in so far as it affected the following described land, situated, etc. To have and to hold "the said indenture of oil and gas lease unto" appellants for the term of the lease, the privileges and rights accruing by virtue thereof, subject to the rents, etc., entered into between the original lessor and lessee "to which reference is here made." This assignment having been executed and delivered to the joint agent of the parties, under the terms of the agreement, which expressly referred to it, and which was to be executed under the contract, effectually incorporated its terms into the contract, and in fact makes the lease the contract to assign, and the assignment one entire instrument which should be construed together. Peters v. Phillips, 19 Tex. 74, 70 Am. Dec. 319; Railway Co. v. Settegast, 79 Tex. 256, 15 S. W. 228; Longinotti v. McShane (Tex. Civ. App.) 184 S. W. 598; Bailey v. Railway Co., 17 Wall. 96, 21 L. Ed. 611; 27 C. J, §§ 308 and 309, pp. 259–261. The description of the land in the

lease and in the assignment clearly and definitely designate the particular tract or parcel of land which the lease covered. The verdict of the jury and the testimony shows what land was being purchased. They examined the maps and discussed the lease which was then drawn but had not been signed or acknowledged. That lease and the land described therein was the lease and land appellee contracted to sell and appellants to buy. This cannot well be doubted. And, if the contract is not void for uncertainty, there can be no question from the evidence but that appellants were tendered exactly that which they contracted to buy and pay the price agreed upon.

[6-8] Our decisions have frequently held where there is an express or implied reference from one document to another this incorporates the latter into the former, so as to allow the two to be considered together for the purpose of determining whether the requirements of the statute have been complied with. See authorities last above cited and the following: Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533 (13) at page 538, 124 S. W. 85; Clifton v. Creason (Tex. Civ. App.) 145 S. W. 323; McDougal v. Conn, 195 S. W. 627. The assignment, when executed by placing it in the bank, as agreed should be done, bound the appellee and was enforceable by appellants, had they chosen to carry out the contract and could have been specifically performed. In order to sue upon a contract or lease of real estate under article 3965, R. C. S., it must be in writing or some memorandum thereof in writing, signed by the party to be charged. Danciger was the party to be charged therewith, and he signed both the contract to assign and the assignment itself. This bound him to assign the lease and will pass the lease, if the lease is designated with reasonable certainty. It is said by our Supreme Court, the general rule as to the requisites of the agreement or memorandum in writing under the statutes of fraud is that it—

"should be so reasonably definite and certain within itself or other writing referred to as to parties, consideration, and subject-matter, that specific performance can be enforced without resort to parol testimony." Watson v. Baker, 71 Tex. 739, 99 S. W. 867.

Indeed, it is pointed out by our Supreme Court, in Morrison v. Dailey (Tex.) 6 S. W. 427, that the decisions of the courts are in conflict as to the terms of the contract, but the weight of the authority is that all the material terms of the contract should appear in the writing. On the other hand, it is considered the object of the statute, so far as land is concerned, was to abrogate parol titles, and this is sufficiently accomplished by a promise to convey the land to be as-

signed by the vendor, without requiring the other terms of the agreement to be stated. In that case it was not considered necessary to decide which rule was upon the better reason, as our courts had previously followed the latter rule, which had become a rule of property in this state, citing Fulton v. Robertson, 55 Tex. 401.

[9, 10] We take it, however, as this was an assignment of a lease it should give such of its terms and conditions as to describe or identify it. If the lease is referred to for identification and for its terms, this would be sufficient, we think. The particular land upon wihch this lease was given is described in the assignment. It is referred to therein as a "certain" lease on the particular land, selling all of appellee's title and interest therein which the vendee was to hold for the full term of the lease under its conditions and terms. It is shown appellee had such a lease upon this particular land. There was no other such lease upon that land and indeed there could be but one such valid lease existing at the same time on the same land. This was sufficient, we think, to identify the particular lease then assigned. The reference rendered certain the lease, that is, under the maxim that "that is certain which can be made certain."

"A contract, note, or memorandum sufficient to satisfy the statute of frauds may consist of a writing which, standing alone, is insufficient for this purpose and another writing which is referred to and which, although not in existence at the time, is executed before action is brought. In such case, however, a contract, note, or memorandum sufficient to satisfy the statute does not exist until the instrument referred to is executed." 27 C. J. § 309 at page 262.

The note to the above cites the case of Freeland v. Ritz, 154 Mass. 257, 28 N. E. 226, 12 L. R. A. 561, 26 Am. St. Rep. 244. By the contract in this case it was agreed to assign the oil lease on the land. It was agreed therein an assignment should be executed by placing it in escrow; that it should be looked to for a full description. The assignment was executed, and identified the lease by referring to it for its terms and conditions. This brings the case within the rule announced in the above case. The syllabus, which reflects the opinion of the court, reads:

"A written agreement for a sublease, 'to be made subject' to a lease not yet in existence, * * * is not, for that reason, insufficient under the statute of frauds after such lease is obtained in writing."

It is also said by the court, in the opinion in that case:

"If one of a series of papers which appear to have relation to the same contract is signed by the party to be charged, this is enough, as all the papers are to be considered together as forming one contract or memorandum."

We believe the judgment should be affirmed.