## CONTINENTAL INS. CO. et al. v. MINNEAPOLIS, ST. P. & S. S. M. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1923.)

No. 6200.

**1. Corporations ⚖⇒156—Terms of certificate of stock not conclusive of rights of common and preferred stockholders inter sese.**

A certificate of stock is evidence of the holder's interest in the property of the corporation, but its terms are not conclusive of the rights of common and preferred stockholders, inter sese, which are determined by the charter, articles of incorporation, or other fundamental agreement between all stockholders.

**2. Corporations ⚖⇒156—Certificate of preferred stock to be read in connection with articles of incorporation and by-laws, to determine rights as between purchaser and corporation or other stockholders.**

A purchaser of preferred stock of a corporation may not rely on the terms of the certificate alone to determine his rights as between him and the corporation or other stockholders, but is bound to know that the certificate must be read in connection with the articles of incorporation and by-laws in force when the stock was issued.

**3. Corporations ⚖⇒156—Articles of consolidation held to control over certificates as to rights of preferred stock as to dividends.**

Where articles of consolidation of a railroad company, which constituted its charter, fixed the relative rights of preferred and common stock to dividends with reference to the calendar year in which the profits distributed were earned, by providing that from the profits of any year the preferred stock, which was noncumulative, should first receive 7 per cent. in dividends, and that if, and after the common stock had also received 7 per cent.; any surplus earnings distributed should be divided equally pro rata between both classes of stock, a provision in the certificates of preferred stock that it should be entitled to 7 per cent. in dividends declared "in" any calendar year, before the common stock should receive any dividends, *held* controlled by the articles of consolidation, and the company *held* authorized, without regard to the current year, to declare a dividend, to be paid pro rata on both common and preferred stock, from accumulated surplus of previous years, from the earnings of which both classes of stock had received their full dividends of 7 per cent.

**4. Corporations ⚖⇒156—Statements of preferred stock certificates as to dividends or similar representations by officers cannot create estoppel as between stockholders, affecting holders of common stock.**

Statements in certificates of preferred stock as to its rights to dividends or similar representations by officers cannot create an estoppel against the corporation which will affect the rights of holders of the common stock.

---

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit in equity by the Continental Insurance Company and another against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Decree for defendant, and complainants appeal. Affirmed.

For opinion below, see 283 Fed. 276.

M. H. Boutelle, of Minneapolis, Minn. (Nathan H. Chase, of Minneapolis, Minn., on the brief), for appellants.

Henry S. Mitchell, of Washington, D. C., for appellee.

Before STONE, LEWIS, and KENYON, Circuit Judges.

LEWIS, Circuit Judge. This suit was instituted by appellants, two preferred stockholders in appellee company, to enjoin the carrying out of a resolution passed by its board of directors on March 10, 1922, declaring a dividend of $2 per share on both the common and preferred stock, payable out of the accumulated surplus earnings of the years ending December 31, 1909, to 1919, inclusive, both dividends to be paid April 15, 1922. The part of the resolution to which objection was made and injunctive order sought was the dividend declared and directed to be paid on the common stock; the contention being that inasmuch as a dividend of 7% on the preferred stock had not been declared theretofore in 1922 the common stock was not entitled to receive a dividend until that was done. This insistence is based wholly on the phraseology found in the certificates for the preferred shares issued to appellants, and in all certificates theretofore issued for preferred shares, reading thus:

"This preferred stock is entitled to a preference of seven per centum, non-cumulative, in dividends declared in any calendar year before any dividends are paid upon the common stock of the said company and after dividends have been paid upon the common stock to a like amount of seven per centum for any calendar year then both classes of stock shall participate without distinction or preference in any further dividends for such year."

Appellee in justification of its action in passing the resolution relies on Article XI of its articles of consolidation, by which four railway companies were consolidated in 1888 into and under the name of appellee company, which Article reads thus:

"That if and whenever any dividend shall be declared upon the capital stock of the consolidated corporation, hereby formed, out of the profits of its business, the holders of the preferred stock of such corporation shall be entitled to receive for and in respect of the calendar year within which such profits were made and for and in respect of each and every calendar year out of the profits of which any such dividend shall be declared, semi-annual dividends of not exceeding 3½ per centum each upon such preferred stock, before the holders of any shares of common stock shall be entitled to receive any dividends whatever for or in respect of the profits of such calendar year; but the right of the holders of such preferred stock to such dividends shall not be cumulative. That is to say if the aforesaid dividends of 7 per cent. upon the preferred stock shall not be actually declared by the directors, as earned for and in respect of any calendar year, no right shall exist in favor of the holders thereof to have said dividends afterwards added to the dividend declared for in respect of another calendar year. That, after the declaration of dividends as aforesaid, amounting to 7 per cent. in all, of any calendar year, to the holders of shares of preferred stock, then the directors of said consolidated corporation shall be at liberty, in their discretion, to declare in favor of the holders of

shares of its common stock, not exceeding two semi-annual dividends of 3½ per cent. each for and in respect of such calendar year; and that, after the holders of such common stock shall have received dividends for and in respect of any calendar year, equal to 7 per cent. upon the shares held by them, respectively, then all further dividends declared with respect to such calendar year shall be divided equally and pro rata among all the shareholders of said consolidated corporation, whether the stock held by them be common or preferred."

The trial court held that the Article just quoted, notwithstanding the excerpt above from the certificate, was controlling, that it authorized the board to pass the resolution, and dismissed the bill of complaint. The issue thus presented on appeal from that order raises the inquiry, Do the terms used in the certificates issued to appellants conclusively determine their rights as preferred stockholders? Or are those terms restrained, or avoided if need be, by Article XI?

[1] Appellee's authorized and issued capital is in the proportion of two-thirds common to one-third preferred, and the shares representing it are $100 each. In December, 1919, one of the appellants purchased from a member of the New York Stock Exchange 500 shares, and the other at about the same time and in the same way purchased 800 shares. They each purchased a right theretofore enjoyed by its vendor and his predecessors in interest, a right to participate thereafter in the privileges and benefits of the corporation pro rata with other stockholders, as those rights were determined by its articles of incorporation or association, or other agreement binding upon all stockholders. The issuance to them of new certificates on surrender of the old ones held by their vendor was an express acceptance by the corporation of each of the appellants as a stockholder in the corporation. The certificates, however, were not the things purchased; they only represented the right which was purchased. 1 Cook on Corp. (4th Ed.) § 12; Richardson v. Shaw, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981. It is said in National Bank v. Watsontown Bank, 105 U. S. 217, 222 (26 L. Ed. 1039):

"This legal relation and proprietary interest, on which it is based, are quite independent of the certificate of ownership, which is mere evidence of title. The complete fact of title may very well exist without it. All that is necessary, when the transfer is required by law to be made upon the books of the corporation, is that the fact should be appropriately recorded in some suitable register or stock list, or otherwise formally entered upon its books. For this purpose the account in a stock ledger, showing the names of the stockholders, the number and amount of the shares belonging to each, and the sources of their title, whether by original subscription and payment or by derivation from others, is quite suitable, and fully meets the requirements of the law."

[2] It is a question for corporators or stockholders upon incorporation of the company to decide whether a part of the stock shall be preferred stock, and if so, what preference rights the holders of it shall have over the rights of the holders of unpreferred stock, and as long as their agreement in that respect is not against public policy or in contravention of the laws of the state which grants the corporate charter, the preference rights may be whatever all agree they shall be. Such agreements primarily and almost exclusively affect

rights only of stockholders among themselves. Morawetz on Private Corp. (2d Ed.) §§ 316, 1047; 1 Cook on Corp. (4th Ed.) § 268; Railroad Co. v. Belfast, 77 Me. 445, 1 Atl. 362. It is conceded in appellants' brief that officers of a corporation exceed their authority in the issuance of preferred shares if they act contrary to the basic agreement, and that they may be enjoined from doing so; but it is argued that if authority in this respect is exceeded and the certificates which they put out represent that the holder has greater or less or different preference rights than the articles of association give to him, the corporation is bound to him according to the terms of the certificate, and that it represents the contract obligations of the corporation to the holder. This, of course, ignores substantial rights of the holders of stock of every other class and violates the fundamental agreement between all stockholders. We think Bailey v. Railroad Co., 17 Wall. 96, 21 L. Ed. 611, is a complete refutation of the claim. There the railroad company issued to the holders of its mortgage bonds a circular which set forth a plan for extricating the company from its financial difficulties. The plan proposed to the bondholders that they exchange their bonds in part for other bonds and in part for preferred stock; "the preferred stock to be 7 per cent., and not cumulative, but to share with the common stock any surplus which may be earned over and above 7 per cent., upon both, in any one year." All of the bondholders subscribed to the plan. The company's board of directors appointed a committee to carry out the plan. For that purpose the committee reported an "indenture" to be executed by the company and the bondholders or the trustees of the mortgage. This indenture was referred to a stockholders' meeting, which "instructed the board to procure and adopt on behalf of the corporation, such certificates in relation to the preferred stock, to be issued under said agreement, as may be necessary to carry the same into effect, and cause the same to be executed in behalf of this corporation in such manner as they may think best." The indenture made no reference to the plan, but it undertook to describe the preferences to be given to preferred stock. In doing so it did not show that common as well as preferred was to receive 7% in dividends before any remaining surplus could be divided between them, but rather that they should share equally after the preferred only had received 7%. The certificates issued for the preferred made no reference to the original plan but stated that they were issued in adjustment of the bonds of the company, with the rights set forth in and subject to the terms and conditions of the indenture. The court held that the original plan must be considered with the certificates for the purpose of determining the rights of holders of preferred shares, and that although the plan was admitted in evidence without objection, still objections could not have availed even if they had been made.

We find nothing to the contrary in Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789, 27 L. Ed. 769. There the terms of a prior written instrument specifically fixing preference rights were put into the certificates for preferred shares, hence, when that appeared, it was not necessary to consider anything but the certificates in determining the

rights of preferred holders. By necessary implication it approves the rule laid down in Bailey v. Railroad Co., supra. In Boardman v. Railway Co., 84 N. Y. 157, it was the company that sought to exclude a resolution which fixed the rights of preferred shares. The certificates that had been issued did not set those rights out as fully as they were stated in the resolution. The company there contended, as contended here, that all of the proceedings prior to the issuing of the certificates had become merged in the certificates and that they constituted the contracts between the holders and the company, and that to introduce the resolution was an attempt to vary the terms of those contracts by extraneous proof. The court rejected the company's contention and held the resolution competent, that it should be considered in connection with the terms of the certificates for the purpose of determining the rights of holders of preferred shares. Scott v. B. & O. Ry. Co., 93 Md. 475, 49 Atl. 327, announces the same rule.

[3] The inquiry is to ascertain what is the real contract between the interested parties. The phraseology of the certificates is not in harmony with the claim of either side. To put it in accord with that of appellants the word for, used twice in connection with dividends on the common, should be in, and with that of appellee the word "in," used in the phrase "declared in any calendar year," should be "for." Thus, the phraseology used agrees with Article XI in its reference to dividends on the common stock and disagrees with it in its reference to dividends on the preferred. But when the two, Article and certificate, are read together the discord is avoided and the contractual relation of all stockholders inter sese, and separately with the corporation, is the same on this subject, as it was intended by all that it should be. Fletcher, Cyc. of Corp., Vol. 6, p. 6028, says that the terms of the contract are generally set forth in the certificate, but that those terms are not the only evidence of the contract, and that they must be read in connection with the charter and by-laws in force at the time the stock was issued, to ascertain the true terms of the contract, and that all of these enter into and form a part of it. The same is found in Cook, § 269. It is a misconception to say that the certificate discloses the whole contract, and that to look to charter, resolutions or by-laws is an attempt to vary that contract. They are all to be consulted for the purpose of ascertaining what the contractual rights of the holders of preferred shares are. Article XI fixes the relative rights of holders of preferred and common shares to dividends in respect of the calendar year within which profits were made, and not in respect of the year in which dividends were to be declared, and provides that after each class has received a dividend of 7% for and in respect of the calendar year within which the profits were made, "then all further dividends declared with respect to such calendar year shall be divided equally and pro rata among all the shareholders." The record shows that the preferred shares had received 7% dividends out of the profits earned in each calendar year beginning with 1909 to 1919, both inclusive, and that the common shares had also received dividends of 7% from the profits of each of those years; and that there had been carried over undistributed surplus

earnings for each of those years to an aggregate of more than $12,-000,000. It was from these accumulated surplus earnings that the dividend declared by resolution of March 10, 1922, was to be taken and paid. Inasmuch as both classes of stock had each received 7% dividends from the profits made in each of those years, we think it would have been a violation of the rights of the holders of both preferred and common shares to have distributed in dividends the remainder of the surplus earnings for those years otherwise than as the board directed by the resolution of March 10th.

[4] It is further said that appellee was estopped to pass the resolution of March 10 declaring 2% dividend on the common shares. Just how this estoppel is intended to be made out is not very clear. No action by the board contrary in purpose to that of the resolution of March 10 was ever undertaken. General representations as to the character of preferences to which holders of preferred shares were entitled, made by the company's officers in its application to list its stock on the New York Stock Exchange, are said to be in accord with the phraseology found in the certificates for preferred shares. The representation was in substance a copy of that phraseology. Financial publications which investors are supposed to consult carried the same general representation, presumably obtained from the application to the Stock Exchange. But appellants do not establish that they relied on those representations nor on the form of the certificate, when they purchased; and if they had it would not avail to support the plea, in view of the sources from which all must know the rights of stockholders spring, as we have already tried to point out. The holders of common shares are the persons chiefly interested in the question as to how dividends shall be apportioned between them and the holders of preferred. It is not claimed that the holders of common have said or done anything in recognition of the claims made by appellants.

There is in our judgment no facts on which the plea of estoppel can rest.

Affirmed.