CONTINENTAL INS. CO. et al. v. MINNEAPOLIS, ST. P. & S. S. M. RY. CO.

(District Court, D. Minnesota, Fourth Division. June 26, 1922.)

1. Corporations ⬤⟱156—Articles of consolidation construed as to rights of preferred and common stock respecting dividends.

A provision of the articles of consolidation of a consolidated railway company that the holders of preferred stock should be entitled, for and in respect of the calendar year within which the profits from which a dividend was declared were made, and for and in respect of each calendar year out of the profits of which any dividend should be declared, to certain dividends, before the holders of common stock should be entitled to any dividends, etc., *held* to mean that the profits of each calendar year should be kept separate, and that the preferred stock should have the specified dividend therefrom, and that, after the common stock received a similar dividend, the remaining profits should be divided equally, without regard to the particular year in which or for which the dividend should be declared.

2. Corporations ⬤⟱156—Articles of consolidation control over certificates as to preferred right to dividends.

Preferred stock certificates of a consolidated railroad company, stating that the stock is entitled to a preference in the dividends declared in any calendar year, are controlled by the articles of consolidation, in case of antagonism, and such antagonism exists where the articles provide for such preference with respect to the dividends declared out of the profits of any calendar year, without regard to the particular year in which they are declared.

3. Corporations ⬤⟱156—No estoppel in favor of preferred stockholders as to right to dividends.

Where plaintiffs purchased certificates of preferred stock in a consolidated corporation, providing for a preference in the dividends declared in any calendar year in the usual course of business, and had no greater rights than the rights of other owners of preferred stock, there was no estoppel in their favor as against enforcement of the provisions of the articles of consolidation, giving the preference in respect to the dividends declared from the profits of any calendar year, without regard to the particular year in which they were declared, especially where the contract had been practically construed in accordance with the articles in declaring and paying dividends.

⬤⟱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Continental Insurance Company and another against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Bill of complaint dismissed.

Nathan H. Chase and Mortimer H. Boutelle, both of Minneapolis, Minn., for plaintiffs.

Henry S. Mitchell, of Washington, D. C., for defendant.

BOOTH, District Judge. This is a suit for an injunction. Plaintiffs are owners and holders of preferred stock in the defendant company. On their own behalf, and on behalf of other owners and holders of preferred stock who may come in, they seek to restrain the company and its directors from paying to the owners and holders of common stock in said company a dividend declared by the company in March, 1922, on both the preferred and common stock. Restraining orders were issued, pending the determination of the suit, enjoining the payment of said dividend on either the preferred or the common stock. Final hearing has been had on the bill of complaint, answer, and proof.

The facts have been largely stipulated, but have been supplemented to some extent by evidence taken. From the record the following salient facts appear:

The defendant was organized on or about June 11, 1888, as a result of the consolidation of four previously existing railway corporations, namely: Minneapolis, Sault Ste. Marie & Atlantic Railway Company, Minneapolis & St. Croix Railway Company, Minneapolis & Pacific Railway Company, and Aberdeen, Bismarck & Northwestern Railway Company. By the articles of consolidation it was provided that stock of the new corporation should consist of 140,000 shares of common stock and 70,000 shares of preferred stock, both classes having a par value of $100. In 1907, by amendment to the articles of consolidation, the authorized capital was increased to 280,000 shares of common stock and 140,000 shares of preferred stock. The original issue of stock was largely, if not wholly, exchanged for shares of stock of the original corporations entering into the consolidation. After this exchange of stock, the owners of the preferred stock in the consolidated corporation were also largely owners of the common stock. Article XI of the articles of consolidation reads as follows:

"Article XI. That if and whenever any dividend shall be declared upon the capital stock of the consolidated corporation, hereby formed, out of the profits of its business, the holders of the preferred stock of such corporation shall be entitled to receive for and in respect of the calendar year within which such profits were made and for and in respect of each and every calendar year out of the profits of which any such dividend shall be declared, semi-annual dividends of not exceeding 3½ per centum each upon such preferred stock, before the holders of any shares of common stock shall be entitled to receive any dividends whatever for or in respect of the profits of such calendar year; but the right of the holders of such preferred stock to such dividends shall not be cumulative. That is to say, if the aforesaid dividends of 7 per cent. upon the preferred stock shall not be actually declared by the directors, as earned for and in respect of any calendar year, no right shall exist in favor of the holders thereof to have said dividends afterwards added to the dividend declared for or in respect of another calendar year. That, after the declaration of dividends as aforesaid, amounting to 7 per cent. in all, of any calendar year, to the holders of shares of preferred stock, then the directors

of sa:d consolidated corporation shall be at liberty, in their discretion, to declare in favor of the holders of shares of its common stock, not exceeding two semiannual dividends of 3½ per cent. each, for and in respect of such calendar year; and that, after the holders of such common stock shall have received dividends for and in respect of any calendar year, equal to 7 per cent. upon the shares held by them, respectively, then all further dividends declared with respect to such calendar year shall be divided equally and pro rata among all the shareholders of the said consolidated corporation, whether the stock held by them be common or preferred."

Both classes of stock have equal voting power per share. On the face of each certificate of preferred stock the following statement appears:

"This preferred stock is entitled to a preference of 7 per centum, noncumulative, in dividends declared in any calendar year before any dividends are paid upon the common stock of the said company and after dividends have been paid upon the common stock to a like amount of 7 per centum for any calendar year then both classes of stock shall participate without distinction or preference in any further dividends for such year."

In the application by the company, in 1892, to have its stock listed upon the New York Stock Exchange, appears the following statement:

"The preferred stock is entitled to a preference of 7 per cent. noncumulative in dividends declared in any calendar year before any dividends are paid on the common stock. After payment of 7 per cent. dividend on the preferred stock the common and preferred stock share equally."

And again, in 1909, in the application made by the company to have its increased stock listed on the same exchange, the following statement appears:

"The preferred stock is entitled to a preference of 7 per cent., noncumulative in dividends, declared in any calendar year before any dividends are paid on the common stock. After payment of 7 per cent. dividend on the preferred stock the common and preferred stock share equally. Both preferred and common stock have equal voting power."

The first dividend was declared in August, 1903. The resolution declaring the same reads as follows:

### "Dividend No. 1.

"The following resolution was then read by the secretary:

"Resolved, that a dividend of seven (7) per cent. be, and the same is hereby, declared on the preferred stock of this company, payable October 15, 1903, out of the surplus earnings for the last calendar year to all stockholders of record on the 1st day of October, 1903, and that the transfer books be closed at 3 o'clock in the afternoon of the 30th day of September, 1903, and opened on the 16th day of October, 1903, at 10 o'clock a. m.

"On motion of Capt. John Martin, seconded by Sir Thomas G. Shaughnessy, the same was passed, and was so declared by the president.

"The following was then read by the secretary:

"Resolved, that a dividend of two (2) per cent. be, and the same is hereby, declared on the common stock of this company, payable October 15, 1903, out of the surplus earnings for the last calendar year, to all stockholders of record on the 1st day of October, 1903, and that the transfer books be closed at 3 o'clock in the afternoon of the 30th day of September, 1903, and opened on the 16th day of October, 1903, at 10 o'clock a. m."

Accompanying the dividend checks sent to the preferred and common stockholders for this first dividend was sent the following notice:

"Minneapolis, St. Paul & Sault Ste. Marie Railway Co.

"Minneapolis, Minn., August 21, 1903.

"Dividend No. 1. The board of directors has this day declared out of the surplus earnings for the last calendar year a dividend of seven (7) per cent. on the preferred stock and two (2) per cent. on the common stock, payable October 15, 1903, to stockholders of record at the closing of the transfer books at 3 p. m. on September 30, 1903. Thomas Lowry, President."

The second dividend was declared in January, 1904, and the resolution declaring the same reads as follows:

"Dividend No. 2.

"Resolved, that a semiannual dividend of 3½ per cent. be, and the same is hereby, declared on the preferred stock of this company, payable out of the surplus earnings of the calendar year 1903; and a semiannual dividend of two (2) per cent. be, and the same is hereby, declared on the common stock of this company, payable out of the surplus earnings of the calendar year 1902, both of said dividends to be paid April 15, 1904, to all stockholders of record on the first day of April, 1904; and further be it

"Resolved, that the transfer books of said company be closed at 3 o'clock in the afternoon of March 31, 1904, and opened on the 16th day of April, 1904, at ten (10) o'clock a. m."

The notice accompanying the dividend checks reads as follows:

"Minneapolis, Minn., January 18, 1904.

"Dividend No. 2. The board of directors has this day declared out of the surplus earnings for the calendar year 1903 a semiannual dividend of three and one-half (3½) per cent. on the preferred stock, and out of the surplus earnings for the calendar year 1902 a semiannual dividend of two (2) per cent. on the common stock, payable April 15, 1904, to stockholders of record at the closing of the transfer books at 3 p. m., on March 31, 1904."

The third dividend was declared in August, 1904. Resolution declaring the same reads as follows:

"Dividend No. 3.

"Resolved, that a semiannual dividend of 3½ per cent. be, and the same is hereby, declared on the preferred stock of this company, payable out of the surplus earnings of the calendar year of 1903, and a semiannual dividend of 2 per cent. be, and the same is hereby, declared on the common stock of this company, payable out of the surplus earnings of the calendar year of 1903; both of said dividends to be paid October 15, 1904, to all stockholders of record on the 1st day of October, 1904; and further, be it

"Resolved, that the transfer books of said company be closed at 3 o'clock in the afternoon of September 30, 1904, and opened on Monday, the 17th day of October, 1904, at 10 o'clock. a. m."

The notice accompanying the dividend reads as follows:

"Minneapolis Minn., August 24, 1904.

"Dividend No. 3. The board of directors has this day declared out of the surplus earnings for the calendar year 1903 a semiannual dividend of three and one-half (3½) per cent. on the preferred stock, and out of the surplus earnings for the calendar year 1903 a semiannual dividend of two (2) per cent. on the common stock, payable October 15, 1904, to stockholders of record at the closing of the transfer books at 3 p. m. on September 30, 1904."

Dividends of 3½ per cent. on the preferred stock semiannually continued to be declared by similar resolutions, and payments thereof

made, accompanied by similar notices, until the year 1922. Dividends were also declared on the common stock of 2 per cent. semiannually until 1908, when they were increased to 3 per cent., and in 1910 increased to 3½ per cent., semiannually, by like resolutions, and payments were made, accompanied by like notices, until the year 1922. Dividends of 7 per cent. on both classes of stock were thus paid out of the surplus earnings of the company for the years respectively, 1909 to 1920, inclusive. Plaintiffs became the owners and holders of preferred stock December 26, 1919, which they still own and hold, and they have received dividends accompanied by like notices during the entire period of their ownership in the same manner as other holders of preferred stock as above outlined.

On March 10, 1922, the board of directors of defendant company passed the following resolution:

### "Dividend No. 38.

"Resolved, that a dividend of two dollars ($2.00) per share be, and the same is hereby, declared on the preferred stock of this company, payable out of accumulated surplus earnings of the years ending December 31, 1909, to 1919, inclusive, and a dividend of two dollars ($2.00) per share be, and the same is hereby, declared on the common stock of this company, payable out of the accumulated surplus earnings of the years ending December 31, 1909, to 1919, inclusive; both of said dividends to be paid Saturday, April 15, 1922, to all holders of record at 3 o'clock p. m., Wednesday, March 22, 1922."

It has been the custom of defendant company to keep an account upon its books entitled "Profit and Loss Credit Balance." This account shows accumulated balance of profit and loss at the end of each calendar year. On December 31, 1921, this account had a balance of $16,119,889.31. Included in this balance was the sum of $12,095,536.43, composed of surplus earnings of the years from 1909 to 1919, inclusive, which had been allowed to accumulate. It is the claim of the plaintiffs that this declaration of dividends on March 10, 1922—

"was and is unlawful and illegal and in violence of the rights and preferences of your orators as holders of the preferred shares above alleged, and of the rights, privileges, and preferences of your orators and all other holders of such preferred shares, * * * contrary to law and to the agreements of the parties in that regard."

It is conceded by plaintiffs that the accumulation of a surplus is not unauthorized, and that declaration and payment of dividends out of such accumulated surplus is not unauthorized. It is further conceded by plaintiffs that the time when any dividend shall be declared is discretionary with the board of directors. But plaintiffs contend that their rights are to be determined by the provision above quoted, which appears on the face of the certificates of preferred stock; that the certificate of preferred stock is a contract; that it is complete in itself; that it is unambiguous, and that no other evidence is admissible to show what the contract with the holders of preferred stock is; and, further, that the contract, as shown by the certificates of preferred stock, is that no dividends shall be declared or paid on the common stock in any calendar year until dividends of 7 per cent. have been paid on the preferred stock in that year. As to the dividends in controversy, plaintiffs' position is this:

"The dividend in question is declared in a calendar year; it is the only dividend declared in that year. By its terms it does not entitle the preferred shareholders to a preference of 7 per cent., or, for that matter, of any preference, over the common shares. It is therefore the clearest violation of the contract of the preferred shareholders."

Plaintiffs further contend that article XI of the articles of consolidation is not inconsistent with the statement on the certificates of preferred stock; that article XI means nothing more than that the dividends to which the holders of preferred stock are entitled are not cumulative. As stated by counsel for plaintiffs:

"Far from sustaining the contention of the defendant as now made, the language of this article (XI) imports something entirely different, and that in perfect accord with settled legal principles. Interpreted in the light of these principles, it is plain the language quoted means nothing more than that the preferred stock thereby provided for shall be noncumulative dividend-bearing. In other words, that any arrearages in dividends in a particular year may not be carried over and made a charge upon the earnings of subsequent years."

And again:

"Tested by these principles, the language in article XI, as already stated, imports nothing more than that the arrearages in the annual dividend on the preferred stock cannot be carrried toward and charged to future earnings; in other words, that the stock is noncumulative. The assumed difference between the contract expressed in the preferred certificate and that provided for by the article does not exist."

[1] A careful examination of article XI convinces me that these contentions of plaintiffs in reference to said article are not well grounded. It is true that article XI does provide that the dividends on the preferred stock shall not be cumulative. But it does much more than this: (1) It contemplates a segregation of the surplus earnings of each calendar year. (2) It provides: If and whenever any dividend shall be declared, the holders of the preferred stock shall be entitled to receive (a) for and in respect of the calendar year within which such profits were made, and (b) for and in respect of each and every calendar year out of the profits of which any such dividend shall be declared, semiannual dividends of not exceeding 3½ per cent. each upon such preferred stock, before the holders of any shares of common stock shall be entitled to receive any dividends whatever for or in respect of the profits of such calendar year. (3) It provides that after the declaration of dividends as aforesaid, amounting to 7 per cent. in all in any calendar year, to the holders of shares of preferred stock, then the directors shall be at liberty, in their discretion, to declare in favor of the holders of shares of its common stock not to exceed two semiannual dividends of 3½ per cent. each for and in respect to such calendar year. (4) It provides that, after the holders of such common stock shall have received dividends for and in respect to any calendar year equal to 7 per cent. upon the shares held by them respectively, then all further dividends declared with respect to such calendar year shall be divided equally pro rata among all the shareholders of said consolidated corporation, whether the stock held by them be common or preferred.

There are two distinct clauses in the provision No. (2) above, each commencing "for and in respect of," which I have designated for con-

venience "(a)" and "(b)." It has been contended that the latter of these clauses is but the repetition of the former, or else is meaningless. I cannot agree with this contention. A few illustrations will best show the meaning of the two clauses and the differences between them, and also the meaning of provision (4) above:

(A) Suppose that, prior to 1920, no surplus earnings had been accumulated. Suppose, further, that in 1920 surplus earnings were earned amounting to 6 per cent. on both classes of stock; that in 1921 no dividends were declared; that in 1921 surplus earnings amounting to 7 per cent. on both classes of stock were earned; that in 1922 dividends were declared of 7 per cent. on both classes of stock for 1921 out of the surplus earnings of 1921; that in 1922 a further dividend of 2 per cent. on both classes of stock was also declared for 1921 out of the surplus earnings of 1920. It is clear, on the above supposed state of facts, that the second dividend, while allowable under the provisions contained in the certificate of preferred stock, would nevertheless be forbidden by clause 2(b), article XI, above quoted, but would not be forbidden by clause 2(a), article XI.

(B) Again, suppose there were prior to 1920 no accumulation of surplus earnings, and suppose that in 1920 surplus earnings were earned amounting to 6 per cent. on both classes of stock; that in 1921 surplus earnings amounting to 7 per cent. on both classes of stock were earned; that no dividends were declared or paid in 1921; that in 1922 dividends of 7 per cent. on both classes of stock were declared for 1921 out of the surplus earnings for the year 1921; and that later in 1922 a second dividend of 6 per cent. on both classes of stock, payable out of the surplus earnings of 1920, was also declared, and for the year 1920. Here, again, such second dividend, while not forbidden by the statement contained in the certificates of preferred stock, would be forbidden both by clause 2(a) and clause 2(b) of article XI.

(C) Suppose there were surplus earnings of the year 1910 sufficient to pay 14 per cent. on both classes of stock, and that in 1911 a dividend of 7 per cent. on both classes was paid from such surplus earnings of 1910, the balance remaining as accumulated profits. Suppose, further, that the surplus earnings for the year 1920 equaled 7 per cent. on the preferred stock only, and that in 1921 a dividend of 7 per cent. was declared and paid on the preferred stock in 1920 out of the surplus earnings of 1920, and that later in 1921 a 7 per cent. dividend also was declared and paid on the common stock for the year 1920 out of the surplus remaining for the year 1910. If I understand plaintiffs' construction of the language of the certificates of preferred stock, this later dividend would be allowable. It would not be allowable, however, under clause No. 4, article XI, above quoted, which provides that such an accumulated surplus must be divided equally and pro rata between the two classes of stock.

These illustrations, and numerous others which might be suggested, show that the clauses of article XI are much more comprehensive than the statement on the certificates of preferred stock. The illustrations also show that the clauses are for the benefit of holders of the preferred stock and form part of the contract with them. The authors of article XI, looking to the future, might well have considered any of the above

supposed state of facts not unlikely, or at least, not impossible, of occurrence.

It may be noted in passing that no other holders of preferred stock have accepted the invitation of plaintiffs to become parties to this suit; possibly because they do not acquiesce in the contention that their rights are to be found wholly set forth in the certificates of preferred stock. Not only are the provisions of article XI more comprehensive than those contained in the certificates of preferred stock, but the former are in some respects directly antagonistic to the latter, as may be seen from the above illustrations.

Viewed as a whole, the provisions of article XI, in my judgment, clearly show that the parties thereto intended: That dividends on the preferred stock should be noncumulative; that the profits or surplus earnings of each calendar year should be kept separate on the books; that, before the common stock should have any dividends out of the profits of any calendar year, the preferred stock should have a 7 per cent. dividend therefrom; that after the payment of such dividend on the preferred stock the common stock should be entitled to a dividend, if declared, not to exceed 7 per cent. out of the profits earned in that same year; that any further dividends out of the remaining profits earned in that same year should be divided equally and pro rata among all of the shareholders, whether preferred or common; that these provisions should govern, without regard to the particular year in which dividends should be declared, or the particular year for which they should be declared.

It is contended by plaintiffs that undistributed profits become merged in corporate surplus and lose the earmarks of any particular year. In the absence of provisions to the contrary, this may be true; but, in the case at bar, article XI clearly contemplates keeping separate ·the surplus earnings of each year. There is nothing in such plan contrary to law or public policy. It is further contended that the stockholders have no legal interest in the undistributed profits, nor a lien thereon, and that no trust exists in relation thereto in favor of any stockholder. The answer to this contention is that article XI does not purport to establish a lien upon nor a trust relation to the undistributed profits. It does, however, condition and determine the method of division of such undistributed profits, if and whenever the directors see fit to declare dividends therefrom.

[2] A careful examination of the statement contained in the certificate of preferred stock and a comparison of that statement with the provisions of article XI convinces that the statement in question was intended as an abbreviation of the provisions of article XI. In view of the circumstances under which the stock, both preferred and common, was issued, and in view of the fact that the first owners of preferred stock must have been very largely the same persons as the owners of the common stock, as appears from article VII of the articles of consolidation, it cannot be presumed that there was any intention of having the statement on the certificates of preferred stock antagonistic to or inconsistent with the provision of article XI.

That such antagonism does exist, however, between the provisions of article XI, as above analyzed, and the first clause of the statement on

the certificates of preferred stock, namely: "This preferred stock is entitled to a preference of 7 per centum noncumulative in dividends declared *in* any calendar year before any dividends are paid upon the common stock of said company," I think is fairly clear. The preference provided in article XI is one in reference to dividends up to 7 per cent. out of segregated earnings of each calendar year (if dividends are declared therefrom), without regard to the year when they are declared.

The preference provided in the certificates of preferred stock is one in reference to dividends, up to 7 per cent., declared *in* any year, no matter from what year's surplus earnings are declared. The provisions of article XI allow an equal pro rata division of accumulated surplus earnings at any time in case the preferred and common stock have each already received 7 per cent. dividend from the profits of each of the years contributing to the accumulated surplus. The provisions of the certificates of preferred stock impose the condition that the preferred stock must first have received a 7 per cent. dividend from some source in that particular year in which the dividend from accumulated surplus earnings is declared.

Under all the circumstances, the statements made on the certificates of preferred stock cannot properly be considered alone in ascertaining the contract between the corporation and the holders of preferred stock. But the statements on the certificates of preferred stock must be read in connection with and in the light of the provisions of article XI. Where antagonism exists, the provisions of article XI must prevail. The articles of consolidation are the fundamental law of the corporation, and those articles in the first instance, and before any stock was issued, established the respective rights of the preferred and common stockholders. Those rights could not be changed, either by inadvertent or intentional action, by the board of directors.

[3] There is no estoppel in favor of plaintiffs against the defendant. It is not claimed that the rights of plaintiffs are based upon any peculiar facts or circumstances. Plaintiffs' purchase of preferred stock was in the usual course of business, and their rights are not claimed to be any different from the rights of other owners of preferred stock purchased in like manner. All such purchasers were bound by the provisions of article XI. Furthermore, there has been a practical construction of the contract with reference to preferred stock. For upwards of 15 years, and until 1922, the defendant company has declared and paid semiannual dividends of 3½ per cent. on the preferred stock, and those semiannual dividends have been declared and paid, not in accordance with the provisions in the statement on the certificates of preferred stock, but always in accordance with the provisions of article XI. Moreover, the resolutions of the board of directors, the public notices of declarations of dividends, the notices sent to each holder of preferred stock, including the plaintiffs, have each and all been so worded as to show clearly that the dividends were being declared and paid, not in accordance with the provisions above quoted from the certificates of preferred stock, but in accordance with the provisions of article XI.

Without discussing the numerous cases cited by either counsel, it will be sufficient to say that in my judgment the principles which control the present decision are clearly announced in the following authorities,.

among the many which might be cited: 14 Corp. Jur. § 573; 6 Fletcher, Cyc. on Corporations, p. 6028; 4 Thompson on Corporations, p. 182; Bailey v. Railroad Co., 84 U. S. (17 Wall.) 96, 108, 21 L. Ed. 611; Howell v. Ware, 175 Fed. 742, 99 C. C. A. 318; Boardman v. Lake Shore Ry., 84 N. Y. 157; Rogers v. N. Y., etc., T. L. Co., 134 N. Y. 197, 210, 32 N. E. 27; Niles v. Ludlow Valve Co. (D. C.) 196 Fed. 994, 995; Old Col. Trust Co. v. Omaha, 230 U. S. 100, 118, 33 Sup. Ct. 967, 57 L. Ed. 1410. The conclusion is that the bill of complaint must be dismissed for want of equity, and the temporary restraining orders dissolved.

Decree may be prepared by counsel for defendant and presented for signature, first being submitted as to form to counsel for plaintiffs.