LONGINOTTI v. McSHANE.   (No. 1546.)

(Court of Civil Appeals of Texas. Texarkana. March 2, 1916. Rehearing Denied March 9, 1916.)

1. FRAUDS, STATUTE OF ⊕118(4)—CONTRACT OF SALE—MEMORANDUM—TELEGRAMS.

Under the statute of frauds, Rev. St. art. 3965, the agreement or memorandum required in case of a contract for the sale of realty need not be contained in one instrument, but may take the form of telegrams if, read as one, they present a concluded contract.

[Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. ⊕118(4).]

2. VENDOR AND PURCHASER ⊕16(1) — CONTRACT OF SALE—LETTERS AND TELEGRAMS.

A letter intended to finally inform the purchaser that the vendor would not take less than $17,500, to which the purchaser replied that he would give that amount and to wire him at once, and a telegram from the agent that the vendor accepted that amount, to which the purchaser promptly replied authorizing the agent to close with the vendor for that amount, in connection with a deed definitely describing the realty, furnished in writing the essentials of a written concluded contract of sale.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 17; Dec. Dig. ⊕16(1).]

3. VENDOR AND PURCHASER ⊕75—CONTRACT — TIME FOR PERFORMANCE — REASONABLE TIME.

A contract for the purchase and sale of realty silent as to the time of performance gave a reasonable time for performance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 113–118, 126; Dec. Dig. ⊕75.]

4. VENDOR AND PURCHASER ⊕81—TIME FOR PERFORMANCE — REASONABLE TIME — QUESTION FOR JURY.

Evidence in a purchaser's action for damages for the breach of a contract to sell certain realty held to make the purchaser's failure to perform within a reasonable time a question for the jury.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 136, 137; Dec. Dig. ⊕81.]

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. VENDOR AND PURCHASER ☞350 — PURCHASER'S ACTION FOR DAMAGES—EVIDENCE —DEED.**

In such action, the deed executed by the vendor for the purpose of performance of his part of the agreement and intended for delivery to the purchaser was admissible to establish the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1043–1046; Dec. Dig. ☞350.]

Levy, J., dissenting in part.

Appeal from District Court, Bowie County; H. F. O'Neal, Judge.

Action by Louis Longinotti against John P. McShane. Judgment for defendant, and plaintiff appeals. Reversed, and cause remanded for trial.

The action is by appellant to recover of appellee damages for alleged breach of a contract to sell appellant a certain lot in the city of Texarkana for $17,500 cash. The appellee urged, among other things, the statute of frauds, requiring the agreement, or some memorandum, to be in writing. At the conclusion of all the evidence the court peremptorily instructed the jury to find a verdict in favor of the appellee. Appellant seeks review of the ruling of the court.

Appellee resides in Texarkana, and appellant in Memphis, Tenn. Jas. A. Longinotti is the son of appellant, and was acting as agent for his father. In January, 1912, appellee placed with J. M. Christopher, a real estate broker in Texarkana, the property in suit for sale. Christopher was to receive an agreed commission from appellee upon the sale. The testimony shows that Christopher entered into negotiations with appellant. The following was the correspondence passing in the form of letters and telegrams:

Letter:

"Texarkana, Texas, February 13, 1912.

"Mr. Louis Longinotti, % Pullman Hotel, Hot Springs, Ark.—Dear Sir and Friend: I was talking to you in regard to the Joe McShane building on the corner of Broad and Maple streets, which you are very well acquainted with as for location. I have just been talking with Mr. McShane this afternoon, and he says he will take $19,000.00 for the property, so now I think it is worth the money; so I will leave it to you to judge as to that. He said he is offered $200.00 per month for that building if the town goes wet, and he hasn't any lease on it to any one; so now you can figure for yourself.

"If you think you cannot pay the $19,000.00 you will please notify me at once by mail in regard to the deal. Hoping, though, that you will decide upon taking the property. The Stevens building is sold; it was sold to Mitch, who, as you know, is running a lunch counter; it was sold for $6,100. I am very sorry that you did not take it, as I think same was a safe investment; but nevertheless we cannot get every good thing that comes along.

"Hoping this will find you and your brother Joe well and enjoying good health, I am,

"Yours respectfully, J. M. Christopher."

Telegram:

"Memphis, Tenn., April 2, 1912.

"J. M. Christopher, % Hart Building, Texarkana, Texas: Wire my expense if Benjamin or McShane house sold, if not best all cash price.
"James A. Longinotti."

Telegram:

"Texarkana, Texas, Apr. 3, 1912.

"James A. Longinotti, Care Cordova Hotel, Memphis, Tenn.: Your message received would have replied sooner but waiting on Benjamin just got him decide to take eighteen hundred cash, the McShane building eighteen thousand is least can be bought for please answer immediately if want either building or both my expense. J. M. Christopher."

·Telegram:

"Texarkana, Texas, April 4th, 1912.

"Jas. A. Longinotti, Cordova Hotel, Memphis: Answer my message yesterday as am holding off other answer my expense.
"Jas. Christopher."

Telegram:

"Memphis, Tenn., April 4th, 1912.

"Mr. Jim Christopher, Care Hart Building, Texarkana, Texas: Give McShane seventeen thousand cash and you one hundred fifty answer. James A. Longinotti."

Letter:

"Texarkana, Texas, April 5th, 1912.—

"James Longinotti, Esq., Memphis, Tenn.—Dear Sir: Your telegram received and I have just seen Mr. McShane and figured with him and he turned the $17,000.00 cash for the building down; he says that he will not take less than $17,500.00. He says that will be the least dollar that will buy it, as the first of the year he can get $190.00 per month rent for it.

"So now, Mr. Longinotti, if you want the building you will please wire me at my expense, as real estate is advancing rapidly here, there being a great demand for it on Broad Street.

"You mentioned the Benjamin building; I sold that for $18,500.00 spot cash for Benjamin; so you see real estate is picking up, and you know when you were here some several days ago we went over and examined this building and I told you at the time that this building was easily worth $20,000 as it is corner property. And I still think that it is worth that. So now if you are going to buy this building at the price quoted you, you want to decide right away and wire me at my expense. I am figuring with other parties on this building, and have got McShane down $250.00 less than I have ever got him down before.

"Hoping you will decide to take and wire me to that effect, at my expense, I am,

"Yours sincerely, J. M. Christopher."

Telegram:

"Memphis, Tenn., April 6, 1912.

"Jim M. Christopher, 214½ State St., Texarkana, Texas: Will give seventeen thousand five hundred wire me at once my expense I have another deal to close. James A. Longinotti."

Telegram:

"Texarkana, Ark., Apr. 6, 1912.

"James A. Longinotti, Cordova Hotel, Memphis, Tenn.: Received telegram just got through with McShane he accepts seventeen thousand five hundred wire me to close deal at once with McShane. J. M. Christopher."

Telegram:

"Memphis, Tenn. April 6, 1912.

"Mr. J. M. Christopher, 214½ (State St., Texarkana, Texas: Authorize you close with McShane for seventeen thousand five hundred.
"Louis Longinotti."

Telegram:

"Texarkana, Texas, April 9th.

"Louis Longinotti, Care Cordova Hotel, Memphis, Tenn.: McShane demands purchase money to-morrow morning. Wire Mr. Grim to pay McShane on approval of title your lawyer. Have consulted Rodgers.

"J. M. Christopher."

Lettergram:

"Memphis, Tenn. April 9, 1912.

"W. R. Grim, Texarkana, Ark. Bought through Jim Christopher from McShane his house corner of Broad and Maple streets for seventeen thousand five hundred, on approval of title by Rollin Rodgers and yourself pay seventeen thousand five hundred to McShane. Have deed made to Longinotti and Campanova. Charge account. Kindly act with your usual interest in our behalf. Thank.

"[Signed]      Louis Longinotti."

This lettergram was received by Mr. Grim between 8:30 and 9 o'clock a. m. of April 10th, and read over telephone to Mr. McShane.

Telegram:

"Texarkana, Tex., Apr. 10, 1912.

"Mr. Louis Longinotti, Hotel Cordova, Memphis, Tenn.: Lettergram received. Notified McShane. He said he had already sold property to A. L. Ghio.      [Signed]   W. R. Grim."

According to the evidence given by Mr. Christopher, Mr. McShane "read all these telegrams the same as I did, and advised me to answer them," and Mr. McShane "authorized me to make the price" stated in the letter of April 5th. Christopher further testified, in respect to the telegram of Longinotti dated April 6th, that he showed it to Mr. McShane and—

"he read the telegram and held it in his hand I suppose five or six minutes, and says, 'Well, I will do that; you go and wire them I will accept it. I want Mr. Louis Longinotti's signature to the bottom of the reply.'"

The reply was from Louis Longinotti himself authorizing Mr. Christopher to close the deal. It was undisputed that appellant had on deposit, subject to his check and order, in the Texarkana National Bank, of which Mr. Grim was president, more than the amount of the price of the property, Appellee, according to the evidence, sold the property to A. L. Ghio between 8:30 and 9 o'clock of the morning of April 10th. It is unnecessary to further set out the evidence.

Mahaffey & Keeney, of Texarkana, for appellant. Glass, Estes, King & Burford, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). The first assignment of error urges that there were issues of fact that should have been submitted to the jury for decision, and that the court erred in giving a peremptory instruction against plaintiff.

[1] It has been decided that the agreement or memoranda required by our statute to prevent frauds (article 3965) need not be contained in one instrument, but may take the form of telegrams if they, read as one, present a concluded contract. Duble v. Batts & Dean, 38 Tex. 313; Railway Co. v. Sette-

gast, 79 Tex. 256, 15 S. W. 228; Bailey v. Railway Co., 17 Wall. (U. S.) 106, 21 L. Ed. 611; 1 Warvelle on Vendors, § 101; 20 Cyc. 254.

[2] And a majority of the court are of the opinion that, looking to the memoranda in evidence in this case, it may be said that there was furnished in writing the essentials of a written concluded contract of sale between the parties. In connection with the deed, which should have been admitted in evidence, there was definitely described real estate. The letter of April 5th may be regarded as intended to finally inform Mr. Longinotti that, respecting the price, Mr. McShane "will not take less than $17,500. He says that will be the least dollar that will buy it." And it may be said upon receiving the letter Mr. Longinotto promptly replied, "Will give $17,500, wire me at once my expense, I have another deal to close." Thus there was a definite offer to pay the price stated for the property. And acceptance may convert it into a legal agreement. In reply to this offer there follows the telegram which read:

"Received telegram, just got through with McShane, he accepts seventeen thousand five hundred, wire me to close deal at once with McShane."

And Longinotti promptly replied:

"Authorize you to close with McShane for seventeen thousand five hundred."

And these two telegrams had the effect, it is thought, to accept the offer and make a completed contract of sale. A valid memorandum appearing from which it may be said that a contract of sale was made, there yet remained in the case, it is thought, issues which the court could not, as a matter of law, undertake to decide upon, and which would have to be passed to a jury for decision.

[3] The letters and telegrams, if found to be authorized by McShane, that effectuated a contract of sale, are silent as to the time of performance. Consequently the doctrine of reasonable time, which applies to an agreement when no time of performance is specified, would be read into the contract. 1 Warvelle (2d Ed.) on Vendors, § 138; 2 Page (Ed. 1905) on Contracts, § 1154. Thus, if it devolved upon Mr. McShane to do the first act toward performance of executing and tendering a valid deed, he had the right to a reasonable time in which to do so. And likewise Mr. Longinotti would have the right to a reasonable time from the date of the contract within which to put himself in a condition to perform his part. Neither Mr. McShane nor Mr. Longinotti would be in default under the contract, or entitled to abandon the contract, before a reasonable time for performance elapsed.

[4] What constitutes a reasonable time, prompt action being contemplated, must in each particular case depend upon the situation of the parties, considering the circum-

stances attending the performance. In order, therefore, for appellee to predicate the right to abandon the contract, the court should have been authorized to say, under all the circumstances, as a matter of law, that a reasonable time for performance had elapsed and Mr. Longinotti was in default at the time of the sale of the property by .McShane to Ghio. It is thought that the court could not so declare as a matter of law. It would appear that appellee was ready and offering to perform on April 8th, and directing that a telegram be forwarded to appellant at Memphis, Tenn., demanding performance on his part by, according to Christopher's evidence, 9 o'clock a. m. of April 10th. Regarding this telegram as evidence, as it is, of a request or demand by McShane that the purchaser hasten the performance, the purchaser upon receiving this notice could fairly expect to perform by and at that time. And the reply telegram of Longinotti to Mr. Grim could not be taken as conclusive of an intention not to perform at the time set by McShane, if he did set that time, for the other testimony of Longinotti is that he was ready, willing, and able to perform at all times. All this, therefore, was sufficient evidence to require the jury to decide whether or not there was a breach or failure by Longinotti.

[5] It is concluded that the deed executed by McShane on April 8th should have been admitted, because the evidence shows it was executed for the purpose of performance by McShane of his part of the agreement and was intended for delivery. The deed, in connection with the correspondence, sufficiently furnished in writing memoranda of definitely described real estate. McCown v. Wheeler, 20 Tex. 372; Ryan v. United States, 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447.

The writer does not agree that the letters and telegrams, considered as if blended into one and signed by the parties, import a present concluded contract in writing of sale of the property. If the memoranda relied on, consisting of the letters and telegrams, do not show a concluded agreement, then there was no completed agreement in any writing, and the statute of frauds would have application. The deed, if in evidence, shows on its face a different agreement. The letters and telegrams show on their face a series of connected correspondence, in which the parties were merely endeavoring to agree upon a price and then afterwards formally enter into a contract of sale of the property. The telegram of April 6th, sent by the son of appellant to the real estate broker, was clearly a reply only to the letter of the real estate broker sent the day previous. And the words of the telegram, "Will give seventeen thousand and five hundred," were only intended, as explained by the writing of the letter, as the manifestation of assent on the part of Longinotti, given to the real estate broker, that the price stated was satisfactory

and that he was willing to come up to that price. And so understanding that the wording of the telegram intended only willingness to pay that price, the real estate broker then further communicated with the son of appellant saying to the effect that he had notified the owner of the property of the willingness to give that price, and that the owner (McShane) indicated acceptance or assent to such price, and to therefore "wire me [real estate broker] to close deal at once with McShane." Appellant himself, and not his son for him, then promptly "wired" to the real estate agent, "Authorize you close with McShane for seventeen thousand five hundred." Was this the expression of a present completed contract according to the intent and understanding of the parties at the time these latter telegrams were sent and received? The word "deal," as used, evidently refers to final agreement in particulars of the trade or contract for the property then in open negotiation between the parties. And authorizing a third person to act for the proposed buyer, as Longinotti did, with the seller, to "close deal" or trade, is inconsistent with the intention of having or understanding there was any present agreement completed and concluded. The parties by the phrases "close deal" and "authorize you close with McShane" contemplated, in the light of their acts, further mutual transactions or agreement in respect to the property in order to have and conclude a mutual agreement or contract of sale between them. If the parties did not by the telegrams intend to make a present agreement, the law cannot and does not give the memoranda the legal effect of a present agreement. Consequently the minds of the parties could not be said to have met in complete and formal final agreement until, according to the language, the "deal" or trade was closed or concluded by McShane, acting for himself, and Longinotti, acting through Christopher as intermediary or agent, entering into final and formal agreement of sale and purchase. A deal or bargain is not closed or concluded with the seller and purchaser, acting through an authorized intermediary, until such agreement is actually entered into by the seller and such intermediary or agent. If such agreement was made at all it was not in writing in any form, as shown by the evidence.

But even taking the view of the majority —that the words "McShane accepts" should be construed as having the legal effect of a completed contract by acceptance of a proposal of Longinotti—then it would follow, I think, that the further wording, "authorize you close with McShane for seventeen thousand five hundred," would necessarily be construed as Longinotti's appointing Christopher as his agent to finally carry out or perform the terms of sale. If the parties knew a contract was already effected between them, the phrase "close deal" was meant to accomplish a change from one of

the parties to the other of interest or title to the property. In the performance of the completed terms of sale by Longinotti, acting through Christopher, there were only the acts of receiving the deed from McShane and paying over the money. According to the evidence Longinotti had the money in the bank at Texarkana. And according to the evidence McShane tendered the deed to Christopher; and, failing to pay over the purchase price, as Longinotti, or Christopher for him, did, McShane demanded of Christopher the money. Christopher, as agent of Longinotti, informed his principal of the demand of McShane; and Longinotti, instead of authorizing the bank to pay unconditionally the money, superadded terms not agreed upon. The court could have said, as a matter of law, that a reasonable time necessary to receive a deed and pay the money had elapsed, and that Longinotti by his telegram was not ready, willing, and prompt to execute his part of the contract, even if McShane had not waited until precisely 9 o'clock of April 10th.

Judgment reversed, and the cause remanded for trial.

---

⌘For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.