CURETON, C. J. The opinion of the Commission of Appeals is adopted, and mandamus refused.

=

HANKS v. HAMMAN et al. (No. 702–4628.)

(Commission of Appeals of Texas, Section B. Nov. 24, 1926.)

1. Guardian and ward ⚓111—Guardian's deed to part of larger tract not giving starting point which could be aided by extrinsic evidence held void for uncertainty.

Guardian's deed to minor's property constituting part of larger tract, describing it as "undivided interest in a certain part of M. G. W. league of land situated in Liberty county, Tex., same being about two acres and being on the east side of the T. river and about three miles east of the town of L.," without stating any starting point in aid of which extrinsic evidence could be introduced and probate proceeding under same description, *held* void for uncertainty of description.

2. Evidence ⚓460(7)—Purchasers must exercise diligence to see that deed describes land with sufficient certainty to lead to its location.

Purchasers must exercise due diligence to see that deed itself describes land conveyed with at least such certainty as to lead to its proper location.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action of trespass to try title by Wyatt Hanks, through his next friend, H. E. Marshall, against George Hamman and others. Judgment for defendants was affirmed by Court of Civil Appeals (282 S. W. 935), and plaintiff brings error. Reversed and rendered.

H. E. Marshall and Stevens & Stevens, all of Houston, and Wm. McMurrey, of Cold Springs, for plaintiff in error.

E. B. Pickett, Jr., and P. C. Matthews, both of Liberty, and Gill, Jones & Tyler, of Houston, for defendants in error.

POWELL, P. J. [1] This case is fully stated by the Court of Civil Appeals. See 282 S. W. 935. It is unnecessary to do more here than set out the facts bearing upon the one controlling issue in the case. We agree that this issue is correctly stated by the Court of Civil Appeals as follows:

"If the description of the land in the probate proceedings and guardian's sale was sufficient, then title to the land is in appellees, but otherwise appellant would be entitled to recovery. This is the controlling question in the case."

The Court of Civil Appeals decided that the description in the probate proceedings, aided by extrinsic and parol testimony, was sufficient. So holding, it affirmed the judgment of the district court.

On December 15, 1916, one C. H. Cain was appointed guardian of a minor, Wyatt Hanks. On March 5, 1917, Cain, as guardian, made application to the probate court to invest $100 of his ward's money "in land, same being an undivided interest in the M. G. White league, situated in Liberty county, Tex., near what is now known and called the oil well of the Imperial Oil Company, about 3 miles south of the town of Liberty." The Court of Civil Appeals states that the name "Imperial Oil Company" was a mistake and should have been "Empire Oil & Fuel Company," and that said company was the only company then operating on the White land. The court authorized such an investment, and deed was taken on same date from D. J. Harrison to Wyatt Hanks. The description in the deed actually describes the very land now involved in this suit, and read as follows:

"All the oil, gas and other minerals in and under the hereinafter described land * * * lying and being situate in the county of Liberty and state of Texas, and being part of the M. G. White league, abstract No. 117, and being a part of lot no 3, set aside to Sallie Chambers et al, in cause No. 3557, styled Westly Monroe v. Jessee Williams, by decree of record in Book E, p. 154 et seq., of the minutes of the district court of Liberty county, Tex., and being more particularly described by metes and bounds as follows: Commence at the N. E. corner of said lot No. 3 so set aside to Sallie Chambers. Thence run southerly along the E. line of said lot 28.93 vrs. to a point for the N. E. and beginning corner of the land herein described. Thence N. 88 W. 390.6 vrs. to a point for the N. W. corner of the land herein described. Thence S. 2 W. 29 vrs. to a point for the N. W. corner of the land herein described. Thence S. 88 E. 388.6 vrs. to a point in the E. line of said lot No. 3 for the S. E. corner of the land herein described. Thence northerly along the E. line of said lot No. 3, 39.03 vrs. to the place of beginning, to contain 2 acres of land."

So, Hanks owned the mineral rights under a very definite two acres of land in the M. G. White league in Liberty county.

On April 9, 1917, the guardian made application to the court to sell real estate belonging to the minor. It was described as follows:

"An undivided interest in a certain part of the M. G. White league of land, situated in Liberty county, Tex., same being about two acres, and being on the east side of the Trinity river

⚓For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and about three miles south of the town of Liberty, Tex."

On April 15, 1917, the court granted the application for the sale of the very property described in the application just mentioned. On April 18, 1917, the guardian reported he had sold this very land for $200, describing it just as it was described in the application for the sale. On April 24, 1917, the court confirmed the sale of that very land, and on that same day, Cain, as guardian, executed a deed to the purchaser, Waite, designating the property as follows:

"An undivided interest in a certain part of the M. G. White league of land, situated in Liberty county, Tex., same being about two acres, and being on the east side of the Trinity river and about three miles east of the town of Liberty, Texas." .

It will be seen that the same description was used throughout the proceedings relating to the sale by the minor, except that the final deed to the purchaser locates the land three miles east of the town of Liberty instead of three miles south therefrom. In the view we take of the case, that particular discrepancy is immaterial.

On February 8, 1925, two of defendants in error, for the express purpose of "clarifying the description of the land" contained in the guardian's deed to Waite, aforesaid, took a deed from Hanks, conveying the property, but describing the same as it was described in the original deed from Harrison to Hanks. That description is correct.

But the record shows that Hanks was adjudged insane in a court of competent jurisdiction on October 22, 1921. His continued insanity was pleaded by his next friend in the instant suit. Upon this point, the Court of Civil Appeals speaks as follows:

· "Appellees also pleaded title in themselves by and through a deed executed by appellant February 8, 1925, in ratification of the prior conveyance by his guardian, C. H. Cain. However, they offered no testimony to show that at the time of executing said deed he had recovered his mentality, and so this defense passes out of the case."

As already stated, the one question in this case is whether or not the description in the sale proceedings in the probate court was sufficient. We differ with the lower courts and think not. It is clearly the sale of a smaller tract out of a larger one without any starting point in the deed itself in aid of which extrinsic evidence could be introduced in order to locate the land on the ground. Under these circumstances, the deed is void because of uncertainty of description. In this connection, we quote as follows from our Supreme Court in the case of Tram Lumber Co. v. Hancock, 70 Tex. 312, 7 S. W. 724:

"A deed purporting to convey land which describes it only by quantity, and as being part of a larger tract, with nothing whereby to identify what specific portion of the larger tract is intended to be conveyed, is void for uncertainty of description in a tax title."

In the case of Continental Supply Co. v. Railway Co., 268 S. W. 444, our section of the Commission of Appeals, speaking through Judge Hamilton, said:

"Where the land is a part of the larger tract, the deed conveying the included tract or the judgment, the levy, or the probate proceedings offered in evidence, and to which the court may legally look, must contain a general description of the land embraced in the larger tract, in addition to the description of the inclosing tract— a starting point, a datum, referring to the included tract from which it may be traced by extrinsic facts to its location and be found. The general description may be only the name of the owner, a designated person's interest in the larger tract, or some such fact. But there must be a nucleus of description of the inclosed tract, around which extrinsic facts may be gathered from oral evidence such as locate the land. There must be something in the description to which oral evidence may be tied. Without such datum to begin with, proof of extrinsic facts is inadmissible. In the absence of such general though inaccurate description of the inclosed tract, to permit oral proof of location would be to pass the title to land by parol in violation of the statute."

We quote again from our opinion in the Supply Co. Case, supra, as follows:

"It has been held often by our Supreme Court that a deed by a sheriff conveying, as the result of a sale by him, an undesignated part of a larger tract of land, there being no means of distinguishing the part sold from the residue, is void. Never has that court, as far as we can find, held a sheriff's deed, containing no other description than that of an undesignated part of a larger tract, to be good. Some of the cases that have held such a deed void on account of such lack of description are Wofford v. McKinna, 23 Tex. 36, 76 Am. Dec. 53; Norris v. Hunt, 51 Tex. 609; Wooters v. Arledge, 54 Tex. 395; Pfeiffer v. Lindsay, 66 Tex. 123, 1 S. W. 264. The action of the court in holding the deeds in the above cases void was expressly approved in Smith v. Crosby, 86 Tex. 15, 23 S. W. 10, 40 Am. St. Rep. 818. In that case Chief Justice Stayton, in discussing these identical cases, said:

"'In these and like cases no description of the land was given to which with safety might extrinsic evidence be applied for the purpose of locating it upon the ground.

"'In that class of cases extrinsic evidence could not be received, simply because there is no general yet accurate designation of the land given in the levy and deed by which extrinsic evidence must be controlled. In such cases, to admit extrinsic evidence to show the unexpressed intention of the officer would be to make that operative as a conveyance instead of the deed.'"

The terms of the deed itself must control. In this case, there is absolutely no definiteness of description, unless resort be had to extrinsic matters. Such matters must be tied to something in the deed itself. This dis-

tinction is recognized in the very late case of McCardell v. Lea, 111 Tex. 380, 235 S. W. 518, wherein Judge Greenwood said:

"These proceedings disclose, not an order for the sale of an undefined portion of a larger tract of land, but an order for the sale of the land not previously disposed of and still belonging to the estate of James Davis in the J. D. Martinez league six and nine, in Liberty county, west of the Trinity river, estimated at 2,739 acres."

[2] In the case at bar, there was no order of court authorizing the guardian to sell all of the land, in any survey or any county, belonging to Hanks. Nothing in the proceedings for the sale of the land referred to the land to be sold as the tract purchased from Harrison. If the probate orders had stated that the land to be sold was all the land owned in the White league by Hanks, or that it was the tract bought by him from Harrison, extrinsic evidence might have been admissible in aid of the description of the land actually intended to be sold. Parties buying real estate must exercise due diligence to see that their deed, itself, describes the land conveyed with at least such certainty as to lead to its proper location.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that judgment be rendered by the Supreme Court in favor of plaintiff in error.

CURETON, C. J. Judgments of the District Court and Court of Civil Appeals reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.