## CITY OF ABILENE v. SAYLES.
### (No. 787–4784.)

Commission of Appeals of Texas, Section B.
June 4, 1927.

1. Evidence ⟨key⟩460(6)—Parol evidence held inadmissible to explain "proposed maximum capacity" of lake in contract to sell land adjacent to lake.

Parol evidence *held* inadmissible to explain meaning of words "proposed maximum capacity" of lake, in suit for specific performance of contract to sell land, one side of which was bounded by lake.

2. Evidence ⟨key⟩397(1)—Parol evidence is admissible only to explain ambiguities in contract, not to add to original intention as expressed.

Original intention as expressed in contract cannot be added to by parol evidence; parol evidence being admissible only to explain ambiguities.

3. Municipal corporations ⟨key⟩244(3)—City officers, contracting to sell land, are presumed to have proposed legal method of determining lake's maximum capacity (Rev. St. 1925, art. 7466 et seq.).

Officers of city were presumed to have adopted or proposed legal method for determination of maximum capacity of lake under Rev. St. 1925, art. 7466 et seq., in suit for specific performance of contract to sell land adjacent thereto.

4. Contracts ⟨key⟩167—Provision of law with reference to contract will be read into contract.

In construing contract, provisions of law with reference to subject-matter will be read into contract, and considered as part thereof.

5. Specific performance ⟨key⟩29(2)—Description in contract of land adjacent to lake by reference to lake's proposed maximum capacity held not so indefinite as to render petition for specific performance demurrable (Rev. St. 1925, arts. 7466 et seq., 7494).

In land contract, description of land adjacent to lake, "and situated above the water level of the proposed maximum capacity" of lake,

and above strip 100 feet wide around it, when construed in connection with papers filed as required by Rev. St. 1925, arts. 7466 et seq., 7494, showing maximum capacity water line, *held* not so indefinite as to render petition for specific performance demurrable.

**6. Contracts ☞ 153—Contracts will be construed, if possible, so as to render them effective.**

Courts will so construe contracts within legal bounds as to make them effective, if possible, and not render them worthless.

Error to Court of Civil Appeals of Eleventh Supreme Judicial District.

Action by Henry Sayles, Jr., against the City of Abilene. Judgment for defendant was reversed and remanded by the Court of Civil Appeals (290 S. W. 239), and defendant brings error. Judgment of Court of Civil Appeals affirmed.

Davidson & Hickman and Thos. E. Hayden, Jr., all of Abilene, for plaintiff in error.

Sayles & Sayles, of Eastland, and Wagstaff, Harwell & Wagstaff, of Abilene, for defendant in error.

POWELL, P. J. The nature and result of this case have been admirably stated by the Court of Civil Appeals. See 290 S. W. 239. Inasmuch as we have reached the conclusion that its judgment should be affirmed, we shall not restate the case at any length. The city of Abilene contracted, in writing, to convey to Henry Sayles, Jr., certain tracts of land, most of which adjoin Lake Abilene, an artificial source of water supply for said city. The city later repudiated its contract, and he brought this action to enforce specific performance thereof. The trial court, at first, sustained certain special demurrers. Upon the refusal by Sayles to amend, the general demurrer was then sustained. Upon his still further refusal to amend, the cause was dismissed. The Court of Civil Appeals reversed the judgment of the trial court, remanding the cause for further proceedings.

The writ of error was granted by the Supreme Court on the second assignment in the application, reading as follows:

"Because the honorable Court of Civil Appeals erred in holding that the appellant's said amended petition is not subject to demurrer on account of the insufficiency of the description of the land as contained in the contract."

The description in the contract giving rise to the question here in dispute reads as follows:

"Also such parts of the hereinafter described lands heretofore purchased by said city, the portions or parts of said lands sold to said Sayles being the lands not included within Lake Abilene, and situated above the water level of the proposed maximum capacity of Lake Abilene, and the said city reserves from all of the hereinafter named lands a strip of land 100 feet wide around the water level at maximum capacity of said lake, and it is understood and agreed that all the intervening spaces between the water level of said Lake Abilene and the lands hereby sold shall be used for roadway purposes only."

Immediately following the last preceding aforesaid quotation are listed several tracts of land. It is not contended that the tracts are indefinite. The contract further provided, as follows:

"The city engineer of said city is to survey and furnish plat and field notes as to the acreage hereinabove bought and sold, in order to compute the acreage to be delivered and deeded under this contract of sale."

The parties do not contend that there would have been any difficulty in surveying three sides of these tracts. But it is urged by the city that the fourth side, bordering the lake, could not have been located by the city engineer from any provision actually contained in the contract. And, to be more specific, it seems to be conceded by all the parties and both the lower courts that, if the words "situated above the water level of the proposed maximum capacity of Lake Abilene" be unexplained or left without certain implications of law, then the description is hopelessly deficient. We now come to a consideration of this quoted clause and its effect.

We think there can be no real controversy as to the law in this connection. The Court of Civil Appeals discusses this principle of law correctly in the following language:

"The remaining question is as to the sufficiency of the description. In deciding that question, it must be kept in mind that a contract for the sale of real property is not within the statute of frauds, where, from the description contained in the contract, the property may be identified. In other words, that is certain which can be made certain, but the means of locating or identifying the property must be found in the contract itself. In Stroburg v. Walsh (Tex. Civ. App.) 203 S. W. 391 (writ refused) it is held that oral testimony is admissible in a proper case to identify the subject matter of a contract, but the oral testimony which is admissible must be suggested by the description contained in the writing. Oral testimony is not admissible to prove the terms of a contract which the parties have put in writing but such evidence is admissible to apply the terms of the contract to the subject-matter; that is to say, to identify such subject-matter, where the contract itself furnishes the key to such identification. Jones v. Carver, 59 Tex. 294."

Our section of the Commission of Appeals has thoroughly discussed this principle in the two very recent cases of Continental Supply Co. v. Railway Co., 268 S. W. 444, and Hanks v. Hamman, 288 S. W. 143; Id., 289 S. W. 993.

**[1, 2]** We think, in line with aforesaid authorities by our court, that the Court of Civil Appeals in the case at bar is correct in stating that parol evidence is not admissible to show what was meant by the words "proposed maximum capacity." As stated by counsel for the city, the opening up of parol testimony of that character might develop conflicts in the testimony. And it certainly might add, by parol, to the original intention 'as included in the written contract. It is well settled that you cannot add such parol intentions. You could only explain ambiguities. Consequently we do not think this clause should be affected, one way or the other, by parol testimony of the parties.

**[3-5]** But we do agree with counsel for defendant in error when they say, in referring to these words in the contract:

"These words have and can have but one legal meaning, namely, the maximum capacity or proposed maximum capacity of Lake Abilene as set out in and shown by the written application and accompanying map filed by the city of Abilene with the board of water engineers as required by law and the written permit issued by such board to the city to impound 15,000,-000,000 gallons of water as provided by law."

In other words, we believe that the law itself should read into this contract, as one of its necessary implications, the provision that said maximum capacity was the capacity as fixed by the then existing permit issued by the board of water engineers of the state of Texas. Otherwise it must be said that the city was proposing a maximum capacity for its lake, which was illegal. No such motive will be ascribed to officials, unless they convict themselves of such motive by their own language or conduct. In the absence of such a conviction, it will be conclusively presumed that they proposed the legal method. It is only reasonable to assume that these officials were proposing a maximum capacity in complete harmony with the law relating thereto. In taking this stand, we merely follow the practice of reading into any contract the provisions of law with reference thereto. Title 128, article 7466 et seq., Revised Statutes of 1925, set out the rules of law governing the impounding and appropriation of storm, flood, and rain waters. It is alleged in the instant case that Lake Abilene was constructed and operated under authority of this state law, and that, when the contract in suit was executed, the city could impound its maximum of 15,000,000,000 gallons of water. The only way the city could use this water, legally, was under this law. And, as stated, the law itself must assume that the contracting parties referred to this one and only legal maximum capacity. The statutes referred to provide, among other things, as follows:

"Such application [to take water] shall be accompanied by a map or plat drawn on tracing linen, on a scale not less than one inch equals two thousand feet, showing substantially the location and extent of the proposed work; the location of the headgate, intake, pumping plant or point of diversion by course and distance from permanent natural objects or land marks; the location of the main ditch or canal and of the laterals or branches thereof; the course of the river, stream or other source of water supply; the position and area of all lakes, reservoirs or basins intended to be used or created, *and the water line theref*, the intersection with all other ditches, canals, laterals, lakes or reservoirs the proposed work will touch or intersect, or with which connection will be made; and shall represent in ink of different color from that used to represent the proposed works, the location of all ditches, canals, laterals, reservoirs, lakes, dams, or other work of like character then existing on the ground, with a designation of the name of the owner thereof. Such map or plat shall contain the name of the proposed work or enterprise; the name or names of the applicants, and a certificate of the surveyor, giving the date of his survey, his name and post-office address, and also the date of the application which it accompanies." Article 7494. (Italics ours.)

These papers are all on file with the board of water engineers, and are public documents; and the permit issued, containing all the data enumerated in article 7515 of the statutes aforesaid, must be sent to the county clerk of the county in question for record.

As said by the Court of Civil Appeals, it is alleged in the petition that, with the aid of these water permit papers, showing the maximum capacity water line, the lands under contract are capable of being surveyed. And, if that be true, that court says there is no deficiency in description. Therefore the Court of Civil Appeals held that the demurrer should not have been sustained, because such action cut off a trial of this very contention to the effect that the survey could have been made satisfactorily. With this view of the Court of Civil Appeals we agree. Furthermore, we think the city engineer had just as much right to use these public documents as any other deeds or documents of a like public nature referred to in the contract.

**[6]** It is a general principle of law that the courts will so construe contracts, within legal bounds, as to make them effective, if possible, and not render them worthless.

The city relies mainly upon the cases of Penn v. Yellow Pine Lumber Co., 35 Tex. Civ. App. 181, 79 S. W. 843 and Rosen v. Phelps (Tex. Civ. App.) 160 S. W. 106, in each of which a writ of error was refused by the Supreme Court. But these cases are readily distinguishable from the one at bar. In each of those cases an effort was made to insert in the contract an outside matter, not even mentioned, directly or indirectly, in the contract. Of course, that could not be done. On the other hand, in the case at bar, this very clause under consideration was

placed in the contract originally, and can, in legal contemplation, refer only to the one maximum capacity which is established by law.

There are other points raised in the application, but we think the Court of Civil Appeals has correctly disposed of all such contentions.

Believing that the Court of Civil Appeals has correctly disposed of this case, we recommend that its judgment be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.