## CALLAHAN v. WALSH.
### No. 8758.

Court of Civil Appeals of Texas. San Antonio.

April 6, 1932.

Rehearing Overruled May 25, 1932.

C. W. Trueheart, of Fort Worth, and Geo. Cannon, of San Antonio, for appellant.

Perkins & Floyd, of Alice, and J. R. Dougherty, of Beeville, for appellee.

SMITH, J.

Appellee, J. E. Walsh, owned a 7,000-acre oil and gas lease on what is described throughout the record as the "Wade Ranch," in Jim Wells and Live Oak counties. He employed appellant, T. W. Callahan, to make a certain geological examination and report upon that lease, and to make a well location thereon. For the work appellee agreed to pay appellant $250 in cash "and equivalent of $1,000 in acreage." Appellant fully performed his obligations under the agreement, and appellee paid him the $250 cash agreed upon, but declined to perform the further obligation to pay the "equivalent of $1,000 in acreage," upon the ground that such obligation was not couched in such definite terms as to satisfy the fourth subdivision of the statute of frauds, as follows:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * * 4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year." Article 3995, R. S. 1925.

The trial court upheld this defense, and rendered judgment against Callahan, who appealed.

The agreement in question was arrived at through a series of letters and telegrams passing between the parties, following a personal conference between them. Appellee owned an oil and gas lease on what was known and described as the "Black-Beal Ranch" in Duval county, and a similar lease upon the "Wade Ranch" in Jim Wells county. In seeking to confirm his interpretation of an oral agreement arrived at on April 24, 1930, appellee wrote appellant on that date, as follows:

"My understanding of the conversation and our agreement of this date, pertaining to geological work, data and maps to be made by you of our Lease-hold properties—the Black-Beal lands near the Lyman Gas Wells of Duval County, and our Lease-hold properties in and to the Wade Ranch near Sandia, of Jim Wells County, is as follows: We are to pay you $250.00 in cash; and in addition the sum of $1,000.00 should Oil or Gas or both be produced in paying quantities on either of the above mentioned Lease-hold properties.

"You are to proceed with the work as agreed upon at your earliest convenience, and endeavor to have same completed on or about May 5th, 1930."

Appellant made no direct or specific response to this letter.

On the same day appellee wrote two of his agents residing in Jim Wells county—A. H. Ehlers and Dr. R. M. Black—advising them that he had employed appellant to do "some geological engineering work" for him, and directing them to get in touch with appellant, give him all the "data and information available, "including map of the Wade ranch, and render him all the aid they could give in the project.

On April 28 appellant telegraphed appellee as follows:

"Visited Black Stop Sorry to advise in view of data offered at Alice it would be impossible for me to check it and render any report that might or might not do justice to your lease holdings in that area and justice to myself within time allotted and for suggested monetary consideration Stop Visit Wade ranch tomorrow."

Appellee made no reply to the foregoing message, and on May 7 appellant wired him further, as follows:

"Can give verbal report and tentative location Wade ranch by Saturday Stop Maps and written report by middle of week Stop Charges to be two hundred fifty dollars cash and equivalent of one thousand dollars in acreage Stop This is for Wade ranch only Stop If satisfactory advise Ehlers."

To this message appellee replied by wire on May 8, as follows:

"Your wire of yesterday and terms accepted send map and report to me care Pennsylvania Hotel New York as soon as possible."

Appellant did the work, forwarded his report and map, and made the location on the Wade ranch, at which location a well was subsequently drilled by appellee, and which proved to be a highly productive commercial gas well. An issue of fact developed as to whether or not this well was located after the receipt of the telegram of acceptance or prior thereto. This was resolved by the court in favor of appellant, as follows: "Immediately after receipt of this telegram, Callahan went with Ehlers and C. E. Long, Walsh's driller, to the ranch house of Wallis D. Wade where a map was exhibited to him by Mrs. Wade picturing the location upon the ground of the Wallis Wade Ranch leasehold belonging to J. E. Walsh. The party, then being joined by Mr. Wade, went directly out on the ground and T. W. Callahan made and marked the well location on the Wade Ranch in compliance with his undertaking."

On May 9, 1930, appellant wired appellee as follows:

"Tentative location Wade ranch approximately one mile west of Simms well Stop This location leaves open acreage one mile north which you should have Stop County surveyor should tie in location with property lines."

Upon the geological reports made to him by appellant under the foregoing agreement, appellee drilled a well at the location made by appellant, resulting, as stated, in a highly productive and paying gas well.

Appellee does not question the making of the contract, and concedes full performance thereof upon the part of appellant. In fact, appellee paid appellant the $250 cash consideration provided for in the agreement, thereby confirming the contract, but refused to perform the additional obligation to convey to appellant the "equivalent of $1,000 in acreage," upon the sole ground, as stated, that the contractual provision therefor was so loosely expressed as to offend the fourth subdivision of the statute of frauds.

Upon appellee's refusal to complete performance of the contract, appellant filed an affidavit in the mechanic's lien records of Jim Wells county as a lien against appellee's Wade ranch lease. Appellee then brought this action against appellant to remove cloud cast on his lease by the registration of said affidavit. Appellant thereupon filed a cross-action in which he sought specific performance of the contract in question, or in the alternative for damages. Also appellant impleaded certain third parties to whom appellee had assigned parts of his Wade ranch lease. The cause was tried without a jury, and the trial court has filed full findings of fact and conclusions of law.

■ Appellant contends that the record shows a sufficient memorandum in writing (to satisfy the statute of frauds) of the agreement of appellee to assign to appellant an undivided interest of 500 acres in his Wade ranch leasehold in Jim Wells and Live Oak counties. Appellant bases this contention primarily upon his telegram to appellee of May 7, 1930, as follows:

"Can give verbal report and tentative location Wade ranch by Saturday Stop Maps and written report by middle of week Stop Charges to be two hundred fifty dollars cash and equivalent of one thousand dollars in acreage Stop This is for Wade ranch only Stop If satisfactory advise Ehlers."

And appellee's reply thereto of May 8, 1930, as follows:

"Your wire of yesterday and terms accepted send map and report to me care Pennsylvania Hotel New York as soon as possible."

Appellant places the following interpretation upon his telegram to appellee of May 7, by interpolating the words inclosed in parentheses:

"(I) can give (you my) verbal report and tentative (well) location (on the) Wade Ranch by Saturday. Maps and written report (to be sent you) by middle of week. (My) charges to be $250.00 cash and (the assignment by you to me of the) equivalent of $1,000.00 in acreage (therein, according to the present market value thereof). This (charge) is for (the) Wade Ranch only. If (my terms are) satisfactory advise Ehlers."

Appellee seems to concede this interpretation to be correct except for the interpolated words "(therein, according to the present market value thereof)," which appellee contends cannot properly be interpolated into the writing.

The controversy is therefore reduced to the question of whether the record warrants the courts in writing into the memorandum the words objected to by appellee and rejected by the trial court, or their equivalent. The inquiry may be further narrowed to the question, Do the several writings signed by appellee furnish the means whereby the identification of the property to be conveyed may be applied or completed by parol evidence? We conclude from the authorities that the question should be affirmed. Patton v. Rucker, 29 Tex. 402; Morrison v. Dailey (Tex. Sup.) 6 S. W. 426; Miller v. Hodges (Tex. Com. App.) 260 S. W. 168; Carpenter v. Smith (Tex. Com. App.) 272 S. W. 128; City of Abilene v. Sayles (Tex. Com. App.) 295 S. W. 578; Waterhouse v. Gallup (Tex. Civ. App.) 178 S. W. 773; Longinotti v. McShane (Tex. Civ. App.) 184 S. W. 598; McElroy v. Danciger (Tex. Civ. App.) 241 S. W. 1098; Langham v. Gray (Tex. Civ. App.) 227 S. W. 741.

■ Those writings referred to appellee's "leasehold" on the "Wade Ranch," by which the parties were relegated to the record of

that lease in the deed records of the county in which it was situated, in which the ranch was declared to be "known as the Wade Ranch." The writings further referred to a map of the lease in the hands of Mrs. Wade showing the location of the lease on the ground and giving the boundaries thereof. Appellee in one of his letters directed that this map be furnished appellant as a guide in locating the lease in question, and it was so furnished and used by him. This map, so referred to in appellee's signed communications during the progress of the negotiations culminating in the ultimate agreement of the parties, sufficiently identified the property to satisfy the statute. McElroy v. Danciger (Tex. Civ. App.) 241 S. W. 1098.

Appellee contends that there is no reason for the contention that the language of the writing imported the intention that the "acreage" to be conveyed to appellant should be taken out of the Wade lease. We conclude, however, that it was the obvious intention of the parties, as disclosed by all the circumstances of the case when applied to the wording of appellee's telegram to appellant on May 7, 1930, that appellant's compensation in acreage should come from the Wade lease. The original negotiations between the parties related to the "Black-Beal Ranch" in Duval county and the "Wade Ranch" in Jim Wells county, on both of which ranches appellee had oil and gas leases. But by express language all negotiations after April 24 were restricted to the Wade ranch lease, so that the provision in the memorandum in writing that a part of appellant's compensation should be the "equivalent of $1,000.00 in acreage," creates the necessary implication that the "acreage" referred to should come out of the Wade ranch lease. Such construction is fully consistent with the record, is rational and reasonable; whereas any other construction would be wholly inconsistent with the record, unreasonable, senseless. It is the duty of the courts to construe contracts so as to give them effect, where that can be done without doing violence to established rules. City of Abilene v. Sayles (Tex. Com. App.) 295 S. W. 578.

So does it seem that a reasonable construction of the provision in the contract, "the equivalent of $1,000.00 in acreage," required appellee to assign to appellant sufficient acreage out of the Wade ranch lease to amount in value to $1,000, measured by the then market value of that lease, which was $2 per acre; in short, 500 acres. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101.

It is urged by appellee that, even if the foregoing conclusions are justified, nevertheless the contract still is under the ban of the statute of frauds, because it does not call for the conveyance of a specific 500 acres.

The rule seems to be, however, that in cases such as this, where the agreement is to convey a certain number of unidentified acres out of a larger tract, the obligation is to convey an undivided interest in the specified number of acres out of the whole tract, as is sought by appellant here. Fontaine v. Bohn (Tex. Civ. App.) 40 S. W. 637; Waterhouse v. Gallup (Tex. Civ. App.) 178 S. W. 773; Gray v. Producers' Oil Co. (Tex. Civ. App.) 227 S. W. 240.

But, aside from the technical question of the applicability of the statute of frauds, we conclude that the equities of the case are such as to take it out of the statute. The whole record shows conclusively that the agreement was made between the parties as alleged by appellant; that appellant relied thereon and in the utmost good faith fully performed the obligations imposed upon him therein; that his labors resulted in highly paying production for appellee, who accepted the benefits thereof, and greatly profited thereby. In short, as appellant fully performed all the obligations imposed upon him in the contract, and appellee knowingly accepted and fully appropriated the large benefits thereof, and himself partly performed thereunder, his effectual repudiation of the contract and refusal to complete performance thereunder would amount to a fraud which the courts will not sanction. Texas Co. v. Burkett, 117 Tex. 16, 296 S. W. 273, 54 A. L. R. 1397; Matthewson v. Fluhman (Tex. Com. App.) 41 S.W.(2d) 204.

The judgment is reversed, and the cause remanded.

## On Motion for Rehearing.

We have concluded upon rehearing that the record is such as to require this court to render such judgment as the trial court should have rendered, in consonance with the holdings in the original opinion herein, to which we adhere. Accordingly, the former judgment of this court reversing the judgment of the trial court and remanding the cause is hereby set aside, and it is now ordered, first, that the judgment of the trial court be affirmed in so far as the same decrees the cancellation of the affidavit executed by appellant for the purpose of fixing a lien upon appellees' leasehold estate, and removing cloud cast upon appellees' title by the registration thereof; second, that the judgment denying to appellant specific performance of the contract alleged by him be reversed; third, that judgment be here rendered that appellant recover of appellees for specific performance of his contract, and that he do have and recover of appellees an undivided interest of 500 acres in 6,438.24 acres of appellee, J. E. Walsh's lease upon the Wade ranch as described in the pleadings and judgment below, the same being all of said lease except that portion thereof heretofore as-

signed by said Walsh to appellee Wade and Ehlers; fourth, that, except as hereinabove ordered affirmed, the cause be remanded with instructions to the court below to make an equitable partition of said leasehold, so as to segregate and award to appellant the acreage herein decreed to him; fifth, that appellees pay all costs of this appeal.

Affirmed in part; in part reversed and rendered, with instructions.