## WARE v. POINDEXTER FURNITURE & CARPET CO.

### No. 13260.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 8, 1935.

Rehearing Denied Dec. 20, 1935.

Chas. T. Rowland, Leo Brewster, and A. C. Heath, all of Fort Worth, for appellant.

S. C. Rowe, of Fort Worth, for appellee.

MARTIN, Justice.

This lawsuit was instituted in the Forty-Eighth district court of Tarrant county on May 18, 1934, by the Poindexter Furniture & Carpet Company against J. M. Ware and his wife, Louise G. Ware, to recover a balance of $2,650.46 claimed to be due plaintiff from J. M. Ware and wife upon an account for furniture, carpets, etc., sold to them by plaintiff to furnish and equip their residence in the city of Fort Worth, Tex. The petition was accompanied by an itemized account in the aggregate sum of $7,744.96 with credits of cash paid and goods returned in the sum of $5,114.50. The items charged by date in the account began on March 26, 1930, and the account closed October 27, 1931.

Defendants pleaded the two-year statute of limitation and also the statute of frauds. Plaintiffs then by supplemental petition pleaded equitable estoppel; such plea being in substance that the contract of sale was not completed on their part and the purchase price was not due from the defendants until all of the items had been delivered and the house completely furnished to the satisfaction of the defendants, at which time it was agreed be-

tween the parties that defendant Ware pay the balance in monthly installments of not less than $100 per month until it was finally paid in full and that he, with the exception of one month, paid, as agreed, until February, 1933; that he also subsequently promised to return goods sufficient to cover the amount due and thereby the plaintiff was lulled into a sense of security and was by such action on the part of Ware induced to change its position for the worse; and that therefore the defendants should be estopped from availing themselves of the statutes invoked.

Defendants, in replication, by amended answer, still insisted upon their defenses, which were presented both by exception and plea in bar in due form.

The trial court overruled all exceptions and the cause was tried to a jury, to whom was submitted only three issues; the first two being as follows:

"Question One: Do you find from a preponderance of the evidence that on or about October 27, 1931, the plaintiff and defendant entered into an agreement whereby the defendant J. M. Ware would pay the plaintiff the balance due on the bill of goods purchased by defendant at the rate of at least $100.00 per month? Answer: No.

"Question Two: Do you find from a preponderance of the evidence that on or about May 17, 1930, plaintiff and defendant J. M. Ware entered into an agreement whereby defendant Ware should pay plaintiff whatever amount might be then owing for goods purchased or that might be thereafter furnished by plaintiff to defendants in the completion of the bill, $500.00 cash and the balance at $100.00 per month? Answer: Yes."

Defendants, in due time, requested a peremptory instruction in their favor, which was refused by the court and exception duly taken. The court rendered judgment for the plaintiff against J. M. Ware for the amount sued for, but in favor of the defendant Louise G. Ware. Motion for a new trial being overruled, the defendant J. M. Ware brings the case to this court by appeal.

Eighty assignments of error appear in the record in this case, but they are very graciously abridged and concentrated into only fifteen "propositions, upon which this appeal is predicated," as stated in appellant's brief. But even with this seemingly liberal abridgement we can discover only two vital, basic questions involved in the appeal. These are: First, is the debt barred by the two-year statute of limitation (Rev.St. 1925, art. 5526)? And, second, is the contract void as affected by the statute of frauds, as a contract not performable within a year and not in writing? These in fact are the only questions presented in the able briefs of counsel for appellant.

In order that we may understand clearly the factors entering into our consideration of these questions, we will say at the outset that there is no question whatever as to the debt being a just debt. No question is raised as to the purchase and sale of the items charged. There was an issue as to the date when the appellant promised to pay and agreed upon the terms of payment, and the jury by their answer to issue No. 2 fixed that date as of May 17, 1930. Up to that time the record indicates that both parties had treated it as a cash transaction and contemplated the settlement in cash to be made when the entire furnishing of the home of appellant should be completed. But on or about May 17, 1930, appellant paid to the appellee $500 in cash and promised to pay the balance in monthly installments of not less than $100 per month. According to his contract, he might pay more but could not pay less than $100 per month. He began then in June, 1930, and paid consistently $100 per month (with the exception of August, 1930), until February 1933, a total of 32 payments, which, with credits for articles returned, gave him a total credit of $5,114.50. It is evident from this statement of the facts, which are undisputed, that appellee, under its agreement of extension, could not have brought suit for the balance of the debt earlier than March, 1933. By the return of merchandise he had also received a credit at that time of more than $1,000, and the company having agreed to receive the same as so much cash, the appellant could have reasonably claimed still further time for the maturity of installments. The suit was filed on March 18, 1934, just about a year after the appellant ceased his monthly payments, and, giving full force to the contractual obligations of the parties, very clearly within the time allowed by statute for suits upon verbal obligations. Had the merchandise been purchased on open account, as the appellant seems to treat

the transaction, it is quite clear that the entire account would have been barred by limitation; but the record fully supports the contention that the contract of May 17, 1930, was the contract of the parties with reference to the time and terms of payment and this, we think, took the transaction out of the realm of open accounts in so far as limitation is concerned. We therefore overrule all assignments of error based upon the statute of limitations.

In this view of the case, it is unnecessary for us to discuss the question raised by counsel for appellee that the statute of limitation, even if applicable, was tolled by the conduct of appellant, which it claims amounted to an estoppel.

There remains to be considered whether the contract of May 17, 1930, was one subject to the statute of frauds. Article 3995, R.C.S. 1925, provides that "no action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * * 5. Upon any agreement which is not to be performed within the space of one year from the making thereof." The decisions construing this statute, in this as well as other jurisdictions, seem to be unanimous to the effect that if performance is possible under the contract within one year, then the contract is not within the statute of frauds. In the case of Roman v. Goldberg, 3 S.W.(2d) 482, 483, the Court of Civil Appeals at Waco, through Mr. Justice Barcus, said: "It seems to be the settled law that any verbal contract made by parties that is possible of performance within a year is not prohibited by the statute of frauds, although, as a matter of fact, it may be several years before the contract is actually performed, the real test being as to whether it would be possible for the contract to be performed within a year, and, if so, the statute would not apply." A writ of error was refused in that case, and the language is adopted and quoted in the text of Texas Jur. vol. 20, § 41, pp. 255, 256. Weatherford, M. W. & N. W. Ry. Co. v. Wood, 88 Tex. 191, 30 S.W. 859, 28 L.R.A. 526.

In addition to the above, it has been repeatedly held that equity will interpose its restraining hand and not permit the statute of frauds to prevail when one party has fully performed and the party pleading the statute has accepted its benefits. In the comparatively recent case of Callahan v. Walsh, 49 S.W.(2d) 945, the San Antonio Court of Civil Appeals held (quoting from the syllabus) that, "where one party fully performed contract, statute of frauds held unavailable to other knowingly accepting benefits and partly performing."

Chief Justice Cureton, of our Supreme Court, in the case of Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 279, 54 A.L.R. 1397, states the rule to be as follows: "The general rule is that, where one party to an oral contract has in reliance thereon so far performed his part of the agreement that it would be perpetrating a fraud on him to allow the other party to repudiate the contract and set up the statute of frauds in justification thereof, equity will regard the case as being removed from the operation of the statute, and will enforce the contract."

Accepting these as established rules and as the law of the land and applying the same principles to the case at bar, we find: First, that appellee had fully performed its part of the contract on October 17, 1931, the date the last article was delivered; second, that appellant, by paying his monthly installments and negotiating with appellee for a return of part of the merchandise and never repudiating the debt but continuously by word and act acknowledging the same, all the while continuously enjoying the benefit of the articles purchased and using them in his home, in fact so lulled the appellee into a feeling of absolute security as to lead it to forbear bringing suit until such a long period elapsed—that under such circumstances as are disclosed by this record it would be manifestly unjust and inequitable to deprive appellee of the right of recovery for its just debt and that these circumstances take the claim outside of the realm of the statute of frauds, upon the principle of equitable estoppel, which was duly pleaded and abundantly proven by the appellee.

It follows that the judgment of the learned trial court should be, and it is, in all things affirmed.